**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LUCKY COUSINS TRUCKING INC.,**

       **Plaintiff,**

**v.**                        **CASE NO. 8:16-cv-00866-RAL-TGW**

**QC ENERGY RESOURCES**
**TEXAS, LLC and QC ENERGY**
**RESOURCES, LLC,**

       **Defendants.**
_____/

**DEFENDANTS' MOTION TO DISMISS**
**COUNTS III, IV, V AND VI OF PLAINTIFF'S COMPLAINT**

Defendants, QC Energy Resources, LLC and QC Energy Resources Texas, LLC, move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts III, IV, V and VI of Plaintiff's complaint for failure to state a claim.  Count III for fraud should be dismissed because Plaintiff did not plead the claim with particularity and the claim is based on statements that are not actionable under Florida law.  Count IV for conversion and Count V for unjust enrichment should be dismissed because those claims are superseded by the contractual relationship between the parties.  Counts IV and V, as well as Count VI for defamation, should be dismissed because Plaintiff does not allege all the elements of the respective claims, and the statements alleged in Count VI are subject to a qualified privilege.  Plaintiff's complaint also is a classic "shotgun" pleading—each count incorporates by reference all preceding paragraphs and counts—and Counts III, IV, V and VI should be dismissed for that reason as well.

## I.      INTRODUCTION

Plaintiff and its principals established and engaged in a competing business in violation of their non-compete, non-solicitation, and non-disclosure obligations in their Contractor Agreement with Defendants.  *See* Complaint (Dkt. 1), ¶ 104 & Ex. A (Dkt. 1-1), § 19.  Plaintiff's complaint mentions but otherwise ignores this critical operative fact and, as such, it tells only half the story.

Plaintiff's complaint does reveal that Defendants continuously secured work for Plaintiff with Defendants' customers in several states.  Complaint ¶¶ 17, 23, 28, 39, 42-43 & 53.  Along the way, Defendants gave Plaintiff valuable financial concessions which included, but were not limited to, reduced equipment rental fees, discounted pricing from Defendants' suppliers, and the ability to capitalize on Defendants' goodwill by utilizing their name and service marks.  *Id.* ¶ 34.  According to the complaint (and among numerous other concessions), Defendants gave Plaintiff tens of thousands of dollars in credits and higher revenue percentages on certain work.  *Id.* ¶ 70, 77.

Despite substantial assistance from Defendants, Plaintiff failed to prosper, and its President, Givo Younani, established a competing business Skyline Transport Group, LLC, in violation of the restrictive covenants in Plaintiff's Contractor Agreement with Defendants.  *Id.* ¶ 104 & Ex. A § 19.  Plaintiff's motivations are transparent—it hoped to cut Defendants out of the revenue stream from Defendants' customers for which Plaintiff provided transportation services, and provide itself with even greater revenue than the percentages Plaintiff received from Defendants, which were as high as 92.5% according to Plaintiff's own allegations.  Complaint ¶

2

77.[1]  The problem for Plaintiff is that its conduct is prohibited by the express terms of the restrictive covenants in the Contractor Agreement attached to Plaintiff's complaint.  Complaint Ex. A § 19.  Upon discovering Plaintiff's efforts to compete with Defendants, and for other reasons, Defendants terminated the Contractor Agreement.  *See* Complaint ¶¶ 113, 159.

Plaintiff responded by filing a six-count complaint asserting claims for (1) declaratory judgment as to Plaintiff's restrictive covenants, (2) breach of contract, (3) fraud, (4) conversion, (5) unjust enrichment, and (6) defamation.  As discussed in this motion, Plaintiff reprises its purported contract claim in four additional counts, each as legally defective as the next.

Moreover, Plaintiff's supposed grounds for seeking a declaration on its restrictive covenants rely on inconsistent allegations that strain credulity.  For instance, Plaintiff alleges it performed transportation services for Defendants' customer, Chesapeake Energy, which Defendants served in several states.  Complaint ¶¶ 17, 23, 28, 39, 42-43 & 53.  Yet Plaintiff somehow claims that its restrictive covenants should not be enforced because "[t]here are no substantial client or customer relationships in the energy transportation industry."  *Id.* ¶ 143.

Plaintiff attempts to distract from its wrongful conduct in operating a competing business (and from the precarious grounds on which it challenges the restrictive covenants that it freely and voluntarily entered into) by alleging serious albeit insufficient claims against Defendants which have no cognizable basis in law or fact.  As discussed below, Plaintiff's claims for fraud, conversion, unjust enrichment, and defamation in Counts III through VI should be dismissed.

---

[1] Although not mentioned in the complaint, the facts will also show that Plaintiff and its President, Givo Younani, were motivated to compete with Defendants through a new entity to avoid significant monetary obligations that Plaintiff had incurred with Defendants and that were cutting into Plaintiff's bottom line.

SLK_TAM:#2518883v3

## II.   LEGAL STANDARDS

**A.   A claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) unless it contains sufficient facts to state a plausible claim for relief.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  To meet this plausibility standard, a plaintiff must plead facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Henry v. Jones,* 484 F. App'x 290, 291 (11th Cir. 2012).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  But pleadings that "are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

SLK_TAM:#2518883v3

**B.      Fraud claims must be alleged with particularity.**

To state a claim for fraud, a plaintiff must allege four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985)). "[A] pleading that contains allegations of fraud is subject to a heightened pleading [standard]." *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010). "In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The heighted pleading standard of Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (quoting *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)). To satisfy the particularity requirement of Rule 9(b), a plaintiff must specify: (1) "precisely what statements were made in what documents or oral representations or what omissions were made;" (2) "the time and place of each such statement and the person responsible for making [the] same;" (3) "the content of such statements and the manner in which they misled the plaintiff;" and (4) "what the defendants 'obtained as a consequence of the fraud.'" *Id.* at 1370-71; *see also, e.g.*, *Linville*, 697 F. Supp. 2d at 1306; *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013). Plaintiffs must "sufficiently link their reliance and damages to [a] particular falsehood." *SIG*, 971 F. Supp. 2d at 1198.

In cases where multiple individuals are alleged to have made fraudulent statements, the complaint must attribute each misrepresentation to a particular individual. *See, e.g., Brooks*, 116 F.3d at 1380-81 ("Plaintiffs have simply 'lumped together' all of the Defendants in their allegations of fraud . . . . [I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)).; *Prof'l LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1374 (S.D. Fla. 2015) (dismissing a fraud claim because of "improper 'lumping together' of multiple defendants."); *SIG*, 971 F. Supp. 2d at 1197-98 ("Plaintiffs fail to plead their negligent-misrepresentation claim with the required particularity . . . . Plaintiffs do not allege in Count IX precisely what false statements were made by any particular Defendant at any particular time."); *Bruhl v. PriceWaterhousecoopers Int'l*, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant.").

## C.   Fraud claims cannot be based on promises of future conduct or statements of opinion.

"Florida law is well-settled that a misrepresentation must ordinarily relate to a past or existing fact to be the basis of a claim for relief sounding in fraud." *See Sleight v. Sun & Surf Realty, Inc.*, 410 So. 2d 998, 999 (Fla. 3d DCA 1982). Statements that constitute matters of opinion are not actionable under Florida law. *See Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995).

Like statements of opinion, promises of future performance are not actionable under Florida law, even if the promises are made to induce a party to enter into a contract. *See, e.g., Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092,

1104 (11th Cir. 1983) ("A false statement amounting to a promise to do something in the future is not actionable fraud, even though the representation was made to induce another to enter into a transaction.") (citations omitted); *Sleight*, 410 So. 2d at 999 ("A false statement amounting to a promise to do something in the future is not actionable fraud."); *Brod v. Jernigan*, 188 So. 2d 575, 579 (Fla. 2d DCA 1966) ("A promise that is merely unfulfilled is not necessarily a false promise.  A promise to do something in the future, even if made as a representation to induce the other person to enter into a contract, does not amount to fraud in the legal sense.").

**D.      Conversion claims and the independent tort doctrine.**

Under Florida law, conversion is "'an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it.'"  *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (quoting *Advanced Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir. 1985)).  "The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation."  *Belfor USA Grp., Inc. v. Bray & Gillespie, LLC*, 2007 WL 4570814, at *2 (M.D. Fla. Dec. 27, 2007) (quoting *Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985)).  As such, a plaintiff must plead and prove an unauthorized act depriving the plaintiff of specified property as part of a conversion claim.  *Tulepan v. Roberts*, 2015 WL 235441, at *8 (S.D. Fla. Jan. 16, 2015).  Conversion does not exist where a plaintiff voluntarily relinquishes property to the defendant.  *In re Sherwood Investments Overseas Ltd., Inc.*, 2015 WL 4486470, at *12 (Bankr. M.D. Fla. July 22, 2015).

Under the independent tort doctrine, a claim for conversion does not exist where the parties have a contractual relationship, and the acts alleged to constitute conversion are not independent from, and do not go beyond, a failure to comply with the terms of the contract.  *Id.* at *12; *Tulepan*, 2015 WL 235441 at *6; *see also, e.g., Ginsberg v. Lennar Fla. Holdings, Inc.*,

645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("It is well established that breach of contractual terms

may not form the basis for a claim in tort."); *Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d DCA

1986) ("A breach of contract to pay money in general does not constitute conversion under the

law of Florida."); *Douglas v. Braman Porsche Audi, Inc.*, 451 So. 2d 1038, 1039 (Fla. 3d DCA

1984) ("[A]n action in tort is inappropriate where the claim is based on a breach of contract.");

*Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("[A]n action in tort is

inappropriate where the basis of the suit is a contract, either express or implied.").  "The

Eleventh Circuit and Florida courts have consistently held that 'a conversion action is not an

appropriate means of vindicating a claim which essentially alleges breach of contract.'"

*Tulepan*, 2015 WL 235441 at *6 (quoting *Misabec Mercantile, Inc. De Panama v. Donaldson,

Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 838 (11th Cir. 1988)).[2]

## E.    Unjust enrichment claims.

"Florida recognizes a cause of action for unjust enrichment when a plaintiff establishes

that: (1) a benefit was conferred on the defendant; (2) the defendant either requested or

knowingly and voluntarily accepted the benefit; (3) the benefit flowed to the defendant; and (4)

that it would be inequitable for the defendant to retain the benefit without paying."  *Belfor USA

Grp., Inc. v. Bray & Gillespie, LLC*, 2007 WL 4570814, at *2 (M.D. Fla. Dec. 27, 2007) (citing

*W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 303 (Fla. 1st DCA

---

[2]  A number of courts have found that the economic-loss rule bars tort claims concomitant with a contract claim, but the economic-loss rule was limited to the products liability context by the Florida Supreme Court's decision in *Tiara Condominium Ass'n v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399 (Fla. 2013).  However, "even in light of *Tiara Condominium*, fundamental contract principles continue to bar a tort claim where a defendant has not committed a breach of duty independent of his breach of contract." *Tulepan*, 2015 WL 235441 at *6; *see also In re Sherwood*, 2015 WL 4486470, at *12 ("The independent tort doctrine . . . serves to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations . . . . [T]he esteemed judges of the Eleventh Circuit Court of Appeals and the Chief Judge of the Middle District of Florida, suggest that the independent tort doctrine survived the holding in *Tiara*.").

1999)).  "Acceptance of a benefit is not enough to prevail on a claim for unjust enrichment

because some benefit must flow to the defendant."  *Id.*

A party may only recover for unjust enrichment when there is no valid express or

implied-in-fact contract.  *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm

Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011); *Zarrella v. Pac. Life Ins. Co.*,

755 F. Supp. 2d 1218, 1226–27 (S.D. Fla. 2010) (citing *Webster v. Royal Caribbean Cruises,

Ltd.*, 124 F. Supp. 2d 1317, 1326-27 (S.D. Fla. 2000)).  "'[A]n unjust enrichment claim can only

be pled in the alternative if one or more parties contest the existence of an express contract

governing the subject of the dispute.'"  *Zarrella*, 755 F. Supp. 2d at 1226-27 (quoting *In re

Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002)).

## F.      The elements of defamation and the qualified privilege defense.

"Defamation has the following five elements: (1) publication; (2) falsity; (3) [the] actor

must act with knowledge or reckless disregard as to the falsity on a matter concerning a public

official, or at least negligently on a matter concerning a private person; (4) actual damages; and

(5) [the] statement must be defamatory."  *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106

(Fla. 2008).  Regarding the last element, a statement is defamatory if it would prejudice the

plaintiff in the "eyes of a substantial and respectable minority of the community."  *Id.* at 1114.

To survive a motion to dismiss, a complaint should set out for each allegedly defamatory

statement: the date, place, and manner of publication; to whom each statement was made; and

facts showing the damages flowing from each statement.  *Bezeau v. Cable Equip. Servs., Inc.*,

2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015).

A defamation claim is subject to dismissal if the facts alleged show that the statement

was subject to a qualified privileged.  *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL

1408391, at *10 (M.D. Fla. Apr. 6, 2010), *aff'd*, 451 F. App'x 862 (11th Cir. 2012) ("Thus, because of the common law qualified privilege, the defamation claims are not sufficiently pleaded and are due to be dismissed."). "'A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though . . . the duty is not a legal one but only a moral or social obligation.'" *Id.* (quoting 19 Fla. Jur. 2d Defamation and Privacy § 58 (1980)). "The question of whether publication of a false statement on a certain occasion is subject to qualified privilege is a question of law to be resolved by the Court." *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1542 (M.D. Fla. 1993), *aff'd sub nom. Shaw v. Reynolds Tobacco Co.*, 15 F.3d 1097 (11th Cir. 1994).

## III.    DISCUSSION

### A.    Lucky's fraud claim is based on statements that are not actionable as a matter of law and is not pleaded with particularity.

Lucky's fraud claim in Count III should be dismissed because it is based on statements that are not actionable under Florida law, and the circumstances of the alleged fraud are not pleaded with particularity. Lucky's fraud claim is based on three purported misrepresentations: (1) five "QCER employees" represented "during several conference calls in August 2014 to Younani that Lucky would be taking over management of Chesapeake's Ohio operation from Infinity" (Complaint ¶ 166); (2) four "QCER employees . . . represented to Younani that Lucky would make six (6) million dollars annually from the Jourdanton operation" (Complaint ¶ 167); and (3) "[d]uring the discussions between QCER and Lucky regarding the Wyoming terminal, QCER failed to disclose the material fact the drivers available to Lucky upon taking over Chesapeake's Wyoming operation were out-of-state drivers." (Complaint ¶ 169).

QCER denies any alleged misrepresentations, but even assuming for the purpose of this motion to dismiss that the allegations are true, the first two alleged misrepresentations are subject to dismissal as a matter of law because they do not relate to past or existing facts that Lucky could have relied on to its detriment.

Count III alleges that QCER employees represented to Lucky that it "*would be*" taking over management of Chesapeake's Ohio operation from Infinity and Lucky "*would make*" six million dollars annually from the Jourdanton operation.  *See* Complaint ¶¶ 166-67 (emphasis added).  These allegations unquestionably relate to future events, not past or existing facts. *Sleight*, 410 So. 2d at 999 ("[A] misrepresentation must ordinarily relate to a past or existing fact to be the basis of a claim for relief sounding in fraud.").  The only reasonable interpretation of the alleged statements is that they are promises of future conduct or opinions of what would happen in the parties' business relationship.  Lucky does not point to any conflict between the alleged statements and the Contractor Agreement attached to the complaint, nor does Lucky identify any other statements that would in some way be rendered ambiguous or untrue in light of the alleged misrepresentations.

As much as Lucky would have liked to see the alleged statements come to fruition, the fact that subsequent events did not pan out as Lucky hoped does not, in retrospect, make the statements fraudulent.  Florida law is clear that statements or promises made regarding a future business relationship cannot serve as the basis for a fraud claim even if such representations were made to induce another party into entering an agreement.  *See, e.g.*, *Maunsell v. Am. Gen. Life & Acc. Ins. Co.*, 707 So. 2d 916, 917 (Fla. 3d DCA 1998) ("American General's future promises regarding Maunsell's promotion and hiring of staff, which were to occur three months after employment, are not actionable as fraud."); *Nat'l Aircraft Servs., Inc. v. Aeroserv Int'l, Inc.*, 544

11

So. 2d 1063, 1065 (Fla. 3d DCA 1989) ("The asserted fraudulent conduct consisted of purported false promises to enter into a particular business arrangement with Brewer in the future.  Even taken in the light most favorable to the plaintiff, the record does not show the existence of a knowingly false representation which is required to establish fraud."); *Sleight*, 410 So. 2d at 999 (dismissing fraud claim based on unfulfilled promise to pay a $20,000 commission); *see also Pan Am. World Airways, Inc. v. Eclipse Holdings, Inc.*, 1998 WL 205313, at *6 (S.D.N.Y. Apr. 27, 1998) (applying Florida law and granting summary judgment on a fraud claim because defendant's "alleged promise did not relate to some past or present conduct on his part but instead involved his intention to complete a licensing agreement.")

Count III is also subject to dismissal because it is not pleaded with the requisite particularity as to any of the alleged misrepresentations.  The complaint does not specify the "time and place of each such statement and the person responsible for making [it]." *See, e.g.*, *Brooks*, 116 F.3d at 1371.  With regard to the first two statements, Lucky alleges only that the statements were made or repeated "during several conference calls" and during one meeting in San Antonio, Texas. *See* Complaint ¶¶ 166, 168.  Lucky improperly "lumps" the two defendants together and imputes each statement to four or five individuals.  The allegations do not "inform each defendant [or individual] of the nature of his alleged participation in the fraud," as required to satisfy the heighted pleading standard of Rule 9(b). *Brooks*, 116 F.3d at 1380-81.  Lucky's complaint fails to allege with particularity a false statement of material fact on the part of any particular defendant or individual.

As to the remaining elements of fraudulent misrepresentation, Lucky only tangentially addresses QCER's purported knowledge that the alleged statements were false and its intent to induce Lucky to act upon them.  The complaint baldly alleges that "QCER intended for Lucky to

rely upon and act upon these representations" and "QCER knew or should have known that the representations were false." *See* Complaint ¶¶ 170-71.  That is the entire extent of Lucky's allegations concerning two essential elements of its fraud claim.  The complaint does not elucidate any facts or circumstances that would tend to suggest QCER actually knew the alleged statements were false or intended for Lucky to rely on the statements.  Under the heightened pleading standard of Rule 9(b), the existence of such facts cannot simply be assumed or implied but must be expressly set forth in the complaint.  *See SIG*, 971 F. Supp. 2d at 1198 (noting that in addition to a false statement of material fact, plaintiffs must "sufficiently link their reliance and damages to [a] particular falsehood").

The deficiencies of the third alleged misrepresentation are even more egregious.  There is no factual predicate underlying the allegation in paragraph 169 that "QCER failed to disclose the material fact the drivers available to Lucky upon taking over Chesapeake's Wyoming operation were out-of-state drivers."  Before this paragraph, the only mention of operations in Wyoming is in paragraphs 39 and 41 that describe services provided to Chesapeake by another QCER independent contractor affiliate, Infinity Oilfield Services.  The complaint does not describe Lucky's involvement in the Wyoming operation, nor does it shed any light on how Lucky could have conceivably been harmed by having out-of-state drivers available for the Wyoming operation.  Lucky's vague allegations simply leave too many facts to be assumed or implied, and they certainly do not expressly set forth sufficient facts to place QCER on notice as to the nature of Lucky's fraud claim.

Lucky's fraud claim does not meet the heighted pleading standard of Fed. R. Civ. P. 9(b), and the claim is not premised on actionable misrepresentations of past or existing facts.  For at least these reasons, Lucky's Count III for fraud should be dismissed.

13

**B.    Lucky's conversion and unjust enrichment claims are foreclosed by the Contractor Agreement which squarely addresses the subject matter of those claims.**

Lucky's conversion and unjust enrichment claims are based on the same alleged facts and circumstances and Lucky's assertion that it should be compensated for maintenance and repairs performed on equipment leased from QCER.  According to Lucky, it placed new tires on trucks and trailers that it leased from QCER and spent thousands of dollars on other maintenance and repairs, including approximately $25,000 to replace two automatic transmissions.  *See* Complaint ¶¶ 88-90.

Lucky alleges that it "had to" return leased equipment to QCER and that QCER "forced" Lucky to return leased equipment after QCER lost a customer contract.  *Id.* ¶¶ 91, 180-81, 195-96.  Lucky believes that QCER sold some of the equipment and continues to use the rest of it, which somehow is an alleged benefit to QCER.  *Id.* ¶¶ 105-09, 182, 186-87, 197, 201-03, 204.  Lucky also complains that QCER never reimbursed Lucky for the cost of new tires and maintenance.  *Id.* ¶¶ 92, 108-10, 188, 203.

What Lucky does not mention is that the Contractor Agreement attached to its complaint obligated Lucky to bear the cost of the maintenance and repairs that are the subject of its conversion and unjust enrichment claims.  Complaint, Ex. A, Contractor Agreement § 20(b).  Lucky's omission is glaring considering that it cited reduced equipment rental rates as a "distinct advantage" of entering the Contractor Agreement with QCER.  *See* Complaint ¶¶ 34-35.  Lucky obviously is aware that leasing equipment from QCER was addressed in the Contractor Agreement, yet it advances serious allegations of conversion and unjust enrichment without so much as mentioning that the precise subject matter of these counts is addressed in the Contractor Agreement.  This creates a significant pleading problem for Lucky because the independent tort doctrine bars its conversion claim, and a party can only recover under an unjust enrichment claim

14

when there is no valid contract between the parties.  *In re Sherwood Investments*, 2015 WL

4486470, at *12; *Tulepan*, 2015 WL 235441 at *6; *Cent. Magnetic Imaging*, 789 F. Supp. 2d at

1317; *Zarrella*, 755 F. Supp. 2d at 1226–27; *Ginsberg*, 645 So. 2d at 494.

Lucky's obligation to maintain the equipment is addressed by Section 20 of the

Contractor Agreement, titled "QCER Equipment."  Complaint, Ex. A, Contractor Agreement §

20.  In the Contractor Agreement, Lucky agreed, among other things, that "it shall: (1) assume

complete and sole responsibility for QCER Equipment upon taking possession of such

Equipment [and] (4) maintain QCER Equipment in good order and repair at all times."  *Id.* §

20(b).  Also in the Contractor Agreement, Lucky agreed to "provide, at [Lucky's] **sole expense**,

all assets and functions necessary to support its operations, including, without limitation: . . .

**tires** [and] **vehicle parts**."  *Id.* § 2(b) (emphasis added).  Under Section 10 of the Contractor

Agreement, titled "Payment of Expenses," Lucky further "agree[d] to pay all costs and expenses

of its operations under this Agreement including, but not limited to . . . **repair and maintenance**

**expenses**."  *Id.* § 10(a) (emphasis added).  In Section 11 of the Contractor Agreement, Lucky

"acknowledge[d] and agree[d] that it is an independent contractor, and that it is solely

responsible for all costs and expenses related to its operation under this Agreement."  *Id.* § 11(a).

Lucky agreed in at least four separate sections of the Contractor Agreement to bear all

costs and expenses of its operations, specifically including as to vehicles their tires, maintenance,

and repairs.  The Contractor Agreement is crystal clear in this regard.  The terms of the

Contractor Agreement are considered part of Lucky's complaint for all purposes.  *See* Fed. R.

Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the

pleading for all purposes.").  Lucky cannot simply ignore the salient provisions of the Contractor

Agreement to multiply its purported claims through counts that have no independent basis separate and apart from the Contractor Agreement.

Lucky expressly agreed in the Contractor Agreement to bear the costs of vehicle maintenance and repairs discussed in its complaint.  Therefore, it is difficult to fathom how Lucky expects to recover the cost of maintenance and repairs performed on trucks and trailers it leased from QCER.  To the extent it insists on pursuing such claims, Lucky can only do so within the context of its purported claim for breach of the Contractor Agreement, not through separate tort or unjust enrichment claims.

Florida cases are legion in holding that a conversion claim does not exist where the acts complained of do not go beyond a failure to comply with the terms of a contract between the parties.  *See, e.g.*, *In re Sherwood Investments* 2015 WL 4486470, at *12; *Tulepan*, 2015 WL 235441 at *6; *Ginsberg*, 645 So. 2d at 494; *Rosen*, 486 So. 2d at 625; *Douglas*, 451 So. 2d at 1039; *Belford Trucking Co.*, 243 So. 2d at 648.  Similarly, a party cannot recover under an unjust enrichment theory when there is a valid contract between the parties.  *Cent. Magnetic Imaging*, 789 F. Supp. 2d at 1317; *Zarrella*, 755 F. Supp. 2d at 1226–27.

Lucky purports to allege its unjust enrichment claim in the alternative to its conversion claim, but "'an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute.'"  *Zarrella*, 755 F. Supp. 2d at 1226-27 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002)).  Although Lucky challenges the enforceability of the restrictive covenants in the Contractor Agreement, its complaint contains no allegations challenging the validity of the Contractor Agreement as a whole.  In fact, it is just the opposite—Count II of Lucky's complaint acknowledges the validity of the Contractor Agreement by seeming to allege that QCER

somehow breached the agreement by terminating it.  Moreover, Lucky does not plead its unjust enrichment claim in the alternative to its contract claim.  Lucky's unjust enrichment and conversion claims should be dismissed as superseded by the contractual relationship between the parties.

### C.   Lucky's complaint is a shotgun pleading because each count improperly incorporates by reference all preceding paragraphs and counts of the complaint.

Highlighting the fact that Lucky did not properly plead its unjust enrichment claim in the alternative is the fact that its breach of contract claim and all other preceding claims are improperly incorporated by reference into its unjust enrichment claim.  *See* Complaint ¶ 191.  In fact, each of Lucky's counts improperly incorporates by reference all preceding paragraphs and counts of the complaint.  *See id.* ¶¶ 133, 158, 165, 176, 191, 206.

"When a complaint fails to follow Rules 8 and 10, it may be classified as a shotgun pleading.  A shotgun pleading is a pleading that 'incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.'"  *See, e.g.*, *Hickman v. Hickman*, 563 F. App'x 742, 744 (11th Cir. 2014) (*per curiam*) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)); *see also, e.g.*, *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential "shotgun" pleading—the sort of pleading we have been roundly condemning for 30 years."); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010) ("The complaint was a typical 'shotgun' pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action.").

Lucky's improper incorporation by reference is particularly detrimental to its unjust enrichment count given that the count's survival depends, in part, on pleading it in the alternative to Lucky's breach of contract claim. But this defect afflicts all but Count I of Lucky's complaint and weighs in favor of dismissing the complaint in its entirety.

**D.      Lucky has failed to allege all the elements of conversion.**

Lucky has failed to state a claim for conversion for the additional reason that it has not alleged a wrongful or unauthorized act depriving Lucky of its property, which is the *sin qua non* of a conversion claim. *See Tulepan*, 2015 WL 235441, at *8 ("[T]he investment of Plaintiff's $2,445,000 bonus into Somerset and Catalina was not 'an unauthorized act [depriving] plaintiff of that money,' as is required to bring a claim for conversion of money under Florida law."); *Belfor USA Grp.*, 2007 WL 4570814, at *2 ("The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation."). Although Lucky's complaint conspicuously omits mention of the relevant equipment maintenance and repair terms in the Contractor Agreement, Lucky does at least admit that the equipment on which it performed maintenance and repairs was leased from QCER. *See* Complaint ¶¶ 88-89.

Lucky alleges that it "had" to return the leased equipment or that QCER "forced" Lucky to return the equipment. *See* Complaint ¶¶ 91, 181, 196. But Lucky does not allege any facts at all to explain how its return of equipment that QCER indisputably owned involved a wrongful or unauthorized act on the part of QCER. Nor does Lucky allege any facts indicating that it somehow acquired an ownership or possessory right in the equipment superior to that of QCER's as a result of the repairs and maintenance. The omission of such allegations by Lucky probably owes to the fact that Lucky knows QCER had the right to take possession of the leased equipment. Without an unauthorized "act of dominion wrongfully asserted over [Lucky's]

18

properly inconsistent with its ownership interest," its claim for conversion must fail.  *See Kee*, 918 F.2d at 1541.

**E.      Lucky has not sufficiently alleged all the elements of unjust enrichment.**

Like its conversion claim, Lucky's unjust enrichment claim also should be dismissed for the additional reason that Lucky has not adequately pleaded all the elements of its claim.  In particular, there are no set of facts that Lucky can allege that would establish it conferred a benefit on QCER and that QCER knowingly and voluntarily accepted the benefit.  As discussed above, Lucky's allegations, even taken as true, demonstrate nothing more than Lucky did what it was obligated to do under the Contractor Agreement—it incurred the cost of repairs and maintenance to equipment leased from QCER.  It is difficult to understand how, for the purposes of Lucky's purported unjust enrichment claim, it is a benefit to QCER for Lucky to do exactly what it was obligated to do under the Contractor Agreement—bear the expense of maintenance and repairs and return QCER's equipment in good working order.

It also cannot be said that QCER "either requested or knowingly and voluntarily accepted the benefit."  *Belfor USA Grp.*, 2007 WL 4570814, at *2.  There are no allegations indicating that QCER requested the work to be performed or that it even knew the maintenance and repairs were being performed until after the work was complete.  Lucky's claims are akin to claims brought against a mortgagee for repair work or improvements made prior to a default prompting the mortgagee to take possession of the property.  Such claims have been rejected by Florida courts.  *See E & M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001) (lender was not unjustly enriched by plaintiff's repairs to boat because lender did not request repairs, repairs were made before borrower's default gave lender a right to seek possession, and lender had no knowledge of the boat's whereabouts until after the repairs were

performed); *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc.*, 412 So. 2d 883, 883-84 (Fla. 2d DCA 1982) (holding that a lessor property owner did not knowingly or voluntarily accept the benefit of repair work because the owner did not request the repair work and did not gain possession of the property until after the work was complete and the tenant's lease was terminated for failure to pay rent).

The fact that Florida courts reject such claims makes perfect sense because there are few circumstances under the law that permit a party to perform services and then demand payment in addition to what was agreed in a contract. *See A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, 120 F. Supp. 3d 1352, 1360 (M.D. Fla. 2015) (dismissing unjust enrichment claims based on automobile repairs because "there are very few circumstances under which the law will permit someone without a contract to first provide services and then compel payment"). That is in essence what Lucky is attempting to do here—demand remuneration for repair and maintenance work that it was already obligated to perform and where there are no allegations that QCER requested the work or even knew it was being performed. Lucky's unjust enrichment claim based on a *post hoc* demand for payment is not actionable and should be dismissed.

**F.      Lucky has not adequately alleged all the elements of defamation, and the allegations that are made demonstrate that the allegedly defamatory statements are subject to a qualified privilege.**

Lucky's Count VI spans less than a page and falls well short of pleading all the required elements of defamation. The gravamen of Lucky's defamation claim is that QCER represented to Lucky employee, John Looney, and to Chesapeake employee, Mike Maimo, that Lucky was out of business, bankrupt, and could not make payroll. Complaint ¶¶ 208-09. Lucky also alleges that QCER told Maimo that QCER would be taking over Lucky's work with Chesapeake. *Id.* ¶ 210.

Notably, Lucky alleges that the purported statements were false, *id.* ¶¶ 211-12, but Lucky does not allege that the statements were defamatory—*i.e.*, that such statements would prejudice Lucky in the "eyes of a substantial and respectable minority of the community." *Jews For Jesus*, 997 So. 2d at 1114.  Nor does Lucky allege any facts that would suggest QCER knew the statements were false or acted with negligent disregard as to their falsity.  Lucky's failure to address two essential elements of a defamation claim is fatal to Count VI.  *See id.* at 1106 (setting out elements of a defamation claim); *see also Warner v. Schmidt*, 2011 WL 2784492, at *2 (M.D. Fla. July 15, 2011) (dismissing defamation claim where the complaint did not contain allegations directed to the defendant's knowledge of whether the statements were false).

Lucky's sole allegation with regard to the damages element of defamation hardly fares any better.  Lucky's conclusory damages allegation, unadorned with specific facts, merely states that QCER's "utterance" of the alleged statements resulted in "damages to Defendants [sic] including . . . lowering employee morale, damages to Plaintiff's goodwill and reputation, and possible loss of business."  Complaint ¶ 213.  This statement, without more, is a mere legal conclusion and cannot be relied upon to establish a central element of Lucky's claim.  *See Warner*, 2011 WL 2784492, at *2 (M.D. Fla. July 15, 2011) ("Moreover, while Warner claims that his 'reputation has been ruined by the Defendant Pamela Geller,' he has failed to assert any facts that establish actual damage to his reputation."); *see also Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Although Lucky has not adequately alleged at least three elements of its defamation claim, Lucky's allegations demonstrate that the purported statements by QCER are subject to a qualified privilege.  Communications made for *bona fide* commercial purposes where both parties have a corresponding interest in the matter are recognized as privileged.  *See, e.g.*, *Gunder's Auto Ctr. v. State Farm Ins.*, 699 F. Supp. 2d 1339, 1343 (M.D. Fla. 2010) (An insurance company's statements to its insured seeking automobile repairs that the repair shop overcharged customers and was inefficient and untimely in its work were privileged because the statements were made "to further [the insurance company's] and the insured's mutual interest in securing timely, quality repairs"); *Corp. Fin., Inc. v. Principal Life Ins. Co.*, 461 F. Supp. 2d 1274, 1294-95 (S.D. Fla. 2006) (statements to state investigator and policy holders regarding termination of insurance agent were privileged); *Shaw*, 818 F. Supp. 1542-43 (finding that statements made to a customer were privileged because "the customer had an interest in learning what happened to a sales representative with whom she had a longstanding personal and business relationship").

Lucky's complaint contains detailed allegations about the parties' work for Chesapeake that spanned at least four locations in three states.  Complaint ¶ 28-32, 39, 42, 65-67.  Lucky acknowledges that Chesapeake is QCER's customer and that QCER assigned Lucky and other independent contractor affiliates to perform work for Chesapeake.  *Id.* ¶ 28, 39.  According to Lucky, the relationship between QCER's affiliates and Chesapeake carried significant import, and Lucky maintains that errors by another QCER affiliate, Infinity Oilfield Services, damaged QCER and Lucky's relationship with Chesapeake.  Complaint ¶ 40-41, 46-47.  Naturally it follows that Lucky's ability to continue operations and even the possibility that it was facing dire financial straits would be a subject of great importance and common interest among QCER,

Lucky, and Chesapeake.  The alleged defamatory statements addressing these very topics are, therefore, subject to a qualified privilege.

Nothing in the complaint indicates that QCER's alleged statements to Looney or Maimo were made with express malice, which would be a required showing for Lucky to overcome the qualified privilege.  *See, e.g., Pierson*, 2010 WL 1408391, at *10 ("[M]alice is alleged only as to a few Defendants, and even as to those few it is alleged alternatively to negligence and recklessness.  This alternative pleading does not equate to an allegation of "express malice." Thus, because of the common law qualified privilege, the defamation claims are not sufficiently pleaded and are due to be dismissed.").  Because Lucky has not sufficiently alleged at least three of the five elements of a defamation claim, and because the purported defamatory statements are subject to a qualified privilege, Lucky's Count VI for defamation should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, QCER respectfully requests that the Court dismiss Counts III, IV, V and VI of Lucky's complaint.

Dated: May 16, 2016.

/s/  Ernest J. Marquart
Ernest J. Marquart
Florida Bar No. 905860
Jeffrey B. Fabian
Florida Bar No. 85868
SHUMAKER, LOOP & KENDRICK, LLP
101 East Kennedy Blvd.
Suite 2800
Tampa, Florida 33602
Telephone:  (813) 229-7600
Facsimile: (813) 229-1660
emarquart@slk-law.com (Primary e-mail)
mdesilles@slk-law.com (Secondary e-mail)
jfabian@slk-law.com (Primary e-mail)
ldyer@slk-law.com (Secondary e-mail)
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2016, I electronically filed the foregoing with the Clerk

of the Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record, including the following:

Jonathan E. Pollard
Pollard PLLC
401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL  33301
jpollard@pollardllc.com


*/s/  Ernest J. Marquart*
Attorney

SLK_TAM:#2518883v3