**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LUCKY COUSINS TRUCKING, INC.,

     Plaintiff,

v.                                                                  Case No. 8:16-cv-866-RAL-TGW

QC ENERGY RESOURCES TEXAS,
LLC, *et al.*,

     Defendants.

_____/

**DEFENDANTS/COUNTER-PLAINTIFFS' RENEWED MOTION**
**TO COMPEL PRODUCTION OF DOCUMENTS**

     Defendants/Counter-Plaintiffs, QC Energy Resources Texas, LLC, QC Energy Resources, LLC, QC Energy Resources, Inc., and Quality Carriers, Inc. (collectively "QCER"), pursuant to Rule 37, Federal Rules of Civil Procedure, and Local Rule 3.04, move for entry of an order compelling Plaintiff/Counter-Defendants, Lucky Cousins Trucking, Inc. ("Lucky Cousins" of "Plaintiff"), Givo Younani ("Younani"), and Skyline Transport Group, LLC ("Skyline") (collectively "Plaintiff/Counter-Defendants") to produce documents responsive to QCER's request for production described in this Motion and awarding QCER its reasonable expenses incurred in making the Motion, including attorneys' fees.

**<u>Introduction</u>**

     QCER seeks the production of communications between any of Plaintiff/Counter-Defendants and FladGroup, LLC or Doug Flad, whom Plaintiff/Counter-Defendants allege to be a business advisor for Younani and a Skyline employee.   QCER seeks these responsive documents from   June 14, 2014, the date of the relevant Contractor Agreement (the

"Agreement") between the parties, to the present.  Because the parties assert claims for breach of the Agreement, and defenses related to the interpretation and performance of the Agreement, communications during this limited time period are relevant, and further, the Court and the parties recently resolved any issues of relevance or overbreadth regarding this request under the directives of this Court's recent Order compelling production. (Doc. 61.)

Despite this Court's previous Order compelling production and its oral admonition regarding Plaintiff/Counter-Defendants' spurious privilege claims, Plaintiff/Counter-Defendants continue to resist a complete production and continue to attempt to hide behind tenuous claims of attorney-client privilege and work product to avoid their obligation to provide responsive documents. Plaintiff/Counter-Defendants' prior blanket assertion of these protections, and their recently re-formulated version of the same objections, fails upon closer examination.  Moreover, Plaintiff/Counter-Defendants have effectively ignored the Court's Order requiring a privilege log—as well as their obligations under the Federal Rules of Civil Procedure—and have instead provided a plainly inadequate 193-page "privilege log" that merely notes the email addresses on 2,390 communications that Plaintiff/Counter-Defendants seek to withhold without providing any substantive information regarding the communications.  As a result, QCER is forced to file this Motion.

## Background

1.    On July 20, 2016, prior counsel for QCER served their First Request for Production on Plaintiff/Counter-Defendants.

2.    On August 22, 2016, Plaintiff/Counter-Defendants served their Responses and Objections to QCER's First Request for Production.

3.    On August 24, 2016, prior counsel for QCER contacted counsel for

Plaintiff/Counter-Defendants to determine when Plaintiff/Counter-Defendants would provide responsive documents and to schedule a "meet and confer" telephone call on certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.

4.     On August 26, 2016, prior counsel for QCER again contacted counsel for Plaintiff/Counter-Defendants to determine when Plaintiff/Counter-Defendants would provide responsive documents and to schedule a "meet and confer" telephone call on certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.

5.     On August 30, 2016, prior counsel for QCER again contacted counsel for Plaintiff/Counter-Defendants to determine when Plaintiff/Counter-Defendants would provide responsive documents and to schedule a "meet and confer" telephone call on certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.

6.     On August 31, 2016, prior counsel for QCER and counsel for Plaintiff/Counter-Defendants discussed certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.  Regarding request for production number 73, counsel for Plaintiff/Counter-Defendants agreed to send an email identifying and discussing the authorities that provide the basis for Plaintiff/Counter-Defendants' objection, which QCER agreed to review and respond to in a continuing effort to reach an agreement on the request.  Counsel for Plaintiff/Counter-Defendants stated that they would soon begin the process of providing their production to QCER on a rolling basis until complete.

7.     On September 21, 2016, prior counsel for QCER contacted counsel for Plaintiff/Counter-Defendants regarding when counsel for Plaintiff/Counter-Defendants would begin producing responsive documents and when they anticipated completing production.

8.     On September 23, 2016, counsel for Plaintiff/Counter-Defendants explained that

3

they would begin production on or before October 10, 2016, and should have the production "substantially complete" by the end of October.

9.     On September 23, 2016, undersigned counsel assumed the representation of QCER in this matter.

10.     On October 12, 2016, undersigned counsel contacted counsel for Plaintiff/Counter-Defendants regarding when counsel for Plaintiff/Counter-Defendants would begin the production that counsel for Plaintiff/Counter-Defendants said would begin on October 10, 2016. Undersigned counsel also asked when counsel for Plaintiff/Counter-Defendants would provide the authorities in support of their objection to request for production number 73 that they had previously agreed to provide.

11.     On October 13, 2016, counsel for Plaintiff/Counter-Defendants responded and explained that they would start a rolling production beginning the next week and that someone in their office would forward the relevant authorities in the next day or two.

12.     On October 21, 2016, undersigned counsel again contacted counsel for Plaintiff/Counter-Defendants regarding the outstanding production yet to begin and regarding counsel for Plaintiff/Counter-Defendants' failure to provide the promised authorities in support of their objection to request for production number 73.

13.     On October 25, 2016, counsel for Plaintiff/Counter-Defendants made their first, limited production of 105 pages of documents.

14.     On October 27, 2016, counsel for Plaintiff/Counter-Defendants made their second production of 321 pages of documents.

15.     On October 31, 2016, counsel for Plaintiff/Counter-Defendants produced 114 pages of documents.

16.     On November 4, 2016, Plaintiff/Counter-Defendants produced 2,405 documents.

17.     On November 8, 2016, QCER served a Subpoena to Produce Documents on FladGroup, LLC.

18.     On November 22, 2016, FladGroup, LLC served its objections to the Subpoena to Produce Documents.  FladGroup, LLC retained the same counsel representing Plaintiff/Counter-Defendants, and FladGroup, LLC's objections mirrored those found in Plaintiff/Counter-Defendants' objection to request for production number 73.

19.     On December 2, 2016, undersigned counsel for QCER contacted counsel for Plaintiff/Counter-Defendants regarding whether Plaintiff/Counter-Defendants had completed their production of documents responsive to QCER's First Request for Production.

20.     Counsel for Plaintiff/Counter-Defendants did not respond to undersigned counsel's inquiry into whether Plaintiff/Counter-Defendants completed their production.

21.     On December 13, 2016, QCER filed a Motion to Compel Production of Documents.  (Doc. 54.)

22.     After noting that the parties agreed to narrow certain overbroad requests, the Court ruled in relevant part, "With respect to the e-mail account searches that are conducted, the materials and a privilege log must be produced by February 24, 2017."  (*Id*. at 2.)

23.     After entry of the Court's Order, the parties agreed on search terms that resolve any disputes of over overbreadth, relevance, and the like.

24.     Plaintiff/Counter-Defendants, however, continue to withhold a substantial number of documents on the basis of privilege.

25.     On February 24, 2017, Plaintiff/Counter-Defendants provided a 193-page privilege log identifying 2,390 communications as immune from discovery.

26.    A copy of the privilege log is attached as Exhibit A.

27.    The privilege log identifies only the parties to the communication, the date and the category of privilege claimed.  (*Id.*)  No other information is provided on the privilege log.

## MEMORANDUM OF LEGAL AUTHORITY

"Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to requests for production of documents under Rule 34."  *Local Access, LLC v. Peerless Network, Inc.*, No. 6:14-CV-399-ORL-40, 2015 WL 5687867, at *2 (M.D. Fla. Sept. 25, 2015).  Plaintiff/Counter-Defendants concede the relevancy of the documents retrieved according to the parties' agreed-upon search terms, but continue to withhold the production of documents on the basis of privilege.   Thus, Plaintiff/Counter-Defendants have refused to comply with their discovery obligations responsive to the request below.

### Request No. 73:

All communications between Lucky Cousins, Skyline Transport, or Mr. Younani and Flad Group, LLC, or any employees or representatives thereof, including but not limited to Doug Flad, since June 14, 2014.

### Plaintiff/Counter-Defendants' Response:

Objection –

First, with respect to the requested communications that were made before approximately March 8, 2016, the request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. The request is a fishing expedition and encompasses an array of communications with no relation to the instant litigation. Doug Flad ("Flad") and his companies have had a business relationship with Younani since 2013 and have served as his insurance

broker, business advisor, tax advisor, and even Skyline employee. The request is over-broad, unduly burdensome and—for the majority of the stated time period—seeks documents that are not relevant and not reasonably calculated to lead to relevant evidence.

Second, all communications between 1. Younani, Lucky Cousins, and Skyline Transport and 2. Doug Flad and Flad Group, LLC; or among 1. Younani, Lucky Cousins, and Skyline Transport, 2. Doug Flad and Flad Group, LLC, and 3. Counsel are attorney-client privileged. Flad is a salaried Skyline employee whose role at the company is Business Advisor and Risk Management. His communications with Younani, Lucky Cousins, Skyline Transport, and counsel are attorney-client privileged.

Third, with respect to all communications occurring immediately before and subsequent to QCER's March 8, 2016 termination of Lucky Cousins, the requested communications are work-product, made in preparation and furtherance of this litigation. Other of the referenced communications occurring before March 8, 2016 are also work product in that they encompass Lucky Cousins' recourse with respect to QCER's conduct.

Further, Plaintiff/Counter-Defendants' communications with Doug Flad and Flad Group, LLC are confidential in that they were made explicitly for advisory purposes with respect to legal and business strategy, and they were not shared with third parties. Without this privilege, Plaintiff/Counter-Defendants would not have sought such advice.

In sum, the communications prior to approximately March 2016 are not related to the instant litigation and are outside the bounds of discovery and all of the communications that are related to the instant litigation are subject to both attorney-client and work product privilege.

**Plaintiff/Counter-Defendants' Updated Response:**

On February 24, 2017, counsel for Plaintiffs/Counter-Defendants reasserted their claims

7

of privilege and identified that they would be withholding the following categories of documents:

- Communications between Pollard PLLC and the Givo Parties (the Plaintiffs in this lawsuit) that are attorney client and/or work-product privileged. This implicates hundreds of conversations between these parties regarding the litigation and litigation strategy.[1]

- Communications between Pollard PLLC and both the Givo Parties and the Flad Parties that are attorney client and/or work product privileged. This implicates conversations between the parties regarding litigation and litigation strategy as well as various documents, annotations of filings, summaries, outlines and demonstratives produced by the Flad Parties specifically for this litigation and specifically to assist counsel in this litigation.

- Communications between the Givo Parties and the Flad Parties that we contend were undertaken in furtherance of the litigation and are therefore attorney client privileged.

- Communications between the Givo Parties and the Flad Parties that involve creation of various documents, annotations of filings, summaries, outlines and demonstratives, all of which were created solely for the purposes of litigation and to assist counsel and are therefore work product privileged.

- Communications between attorney David McDougald or his firm and the Givo Parties  pre-suit related to litigation strategy and that are attorney client and/or work product privileged.[2]

- Communications between attorney David McDougald or his firm and the Givo Parties and Flad Parties pre-suit related to litigation

---

[1] QCER does not contest the privileged nature of communications between the "Givo Parties" and Pollard PLLC that do not include Doug Flad or Flad Group, LLC.  QCER notes, however, that it does not seek these documents, and such communications would not be responsive to the request at issue, which seeks communications between the "Givo Parties" and Doug Flad or Flad Group, LLC.  The request does not seek communications between the Givo Parties and Pollard PLLC that do not involve Doug Flad or Flad Group, LLC, and their inclusion in this privilege claim and privilege log is puzzling.

[2] Again, QCER does not contest the privileged nature of communications between the "Givo Parties" and their counsel that do not include Doug Flad or Flad Group, LLC.  QCER reiterates that it does not seek these documents, and such communications would not be responsive to the request at issue, which seeks communications between the "Givo Parties" and Doug Flad or Flad Group, LLC.  The request does not seek communications between the Givo Parties and any law firm that do not involve Doug Flad or Flad Group, LLC, and their inclusion in this privilege claim and privilege log is puzzling.

strategy and that are attorney client and/or work product privileged.

- Communications between the Givo Parties and various other law firms about unrelated matters and that have no bearing on the instant litigation but are nonetheless subject to attorney client and/or work product privilege. These documents are solely being logged as privileged because they contained hits for various agreed-upon search terms, not because of their relevance to the instant action.

**Reasons to Compel Production:**

The objections to relevance, overbreadth, and burden are now moot as a result of this Court's previous Order and the parties' agreed-upon search terms. While Plaintiff/Counter-Defendants also object on the basis of attorney-client privilege and work product, their purported bases for invoking these protections fail to satisfy their requisite burdens under applicable law. Accordingly, Plaintiff/Counter-Defendants objections should be rejected, and they should be compelled to produce responsive documents, for the reasons explained further below.

1. **Plaintiff/Counter-Defendants' invocation of the attorney-client privilege for communications involving third parties, Lucky Cousins, and *not involving attorneys* should be rejected.**

Plaintiff/Counter-Defendants' objection on the basis of attorney-client privilege fails. Regarding Plaintiff/Counter-Defendants' invocation of the attorney-client privilege, "'[t]he party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential.'" *In re Seroquel Products Liab. Litig.*, 606MD1769-ORL-22DAB, 2008 WL 1995058, at *2 (M.D. Fla. May 7, 2008) (quoting *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003)). Further, "[b]ecause it is an exception to the general rule, courts narrowly construe the privilege and place the onus of proving its applicability on the proponent." *Baklid-Kunz*, 2012 WL 5415108, at *2 (citations

omitted).[3]  Plaintiff/Counter-Defendants cannot sustain their burden.

First, Plaintiff/Counter-Defendants' claim that "all communications between 1. Younani, Lucky Cousins, and Skyline Transport and 2. Doug Flad and Flad Group, LLC … are attorney-client privileged" should be rejected out of hand.  To the extent that Plaintiff/Counter-Defendants are unable to establish by competent evidence that Doug Flad and Flad Group, LLC are in a "business relationship" with Younani and serve as a "Skyline employee," the communications involve third parties and must be disclosed.  *In re Seroquel*, 2008 WL 1995058, at *3 (explaining "[d]ocuments prepared for dissemination to third parties are not protected from discovery by either the attorney-client or the work product privilege" and "[f]inal documents sent to third parties should be disclosed, as should drafts of those documents").

Moreover, Plaintiff/Counter-Defendants only claim that Doug Flad "and his companies" have a "business relationship" with Younani and have served as a "Skyline employee." Plaintiff/Counter-Defendants fail to even allege, much less support, that Doug Flad and FladGroup, LLC acted as Lucky Cousins' employees.  Thus, any communications prepared for or including Lucky Cousins, a third party, should be compelled.  *Id.*

As an even more fundamental issue to Plaintiff/Counter-Defendants' invocation of the attorney-client privilege for this subset of documents, these communications do not involve any attorneys.  As such, they should be compelled.  *Kaiser Aluminum & Chem. Corp. v. Phosphate*

---

[3] Additionally, "[t]he Florida Supreme Court has held that the standard for asserting the privilege is more stringent for corporations than it is for individuals and, therefore, a corporation seeking to shield a communication between lawyer and client from disclosure bears the burden of proving, among other things, that: 'the communication would not have been made but for the contemplation of legal services; ... the content of the communication relates to the legal services being rendered;' and 'the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.'"  *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 689 (S.D. Fla. 2009) (citing *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008) and *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994)).  The Florida Supreme Court's holding applies because "[i]n a diversity action such as this one, state law governs the scope of the attorney-client privilege." *Preferred Care*, 258 F.R.D. at 689 (citing *1550 Brickell*, 253 F.R.D. at 699).

10

*Eng'g & Const. Co., Inc.*, 153 F.R.D. 686, 688 (M.D. Fla. 1994) (where "document was apparently merely an internal communication between co-workers, not a communication between attorney and client," it "was not protected by the attorney/client privilege and was discoverable"); *S. Bell Tel.*, 632 So. 2d at 1385, n.14 (explaining "claim that counsel directed, controlled, and was sometimes present at the employee interviews does not invoke the privilege" and that "[b]ecause the issue here concerns the employees' statements to security personnel and not to the attorney, we hold that the attorney-client privilege does not apply").

    **2.  Plaintiff/Counter-Defendants cannot establish the attorney-client privilege for communications involving attorneys and non-lawyers because the communications serve both business and legal purposes.**

    Even the communications "among 1. Younani, Lucky Cousins, and Skyline Transport, 2. Doug Flad and Flad Group, LLC, and 3. Counsel" should be compelled.  Again, to the extent that Plaintiff/Counter-Defendants are unable to establish by competent evidence that Doug Flad and Flad Group, LLC are in a "business relationship" with Younani and serve as a "Skyline employee," the communications involve third parties and must be disclosed.  *In re Seroquel*, 2008 WL 1995058, at *3.  Similarly, Plaintiff/Counter-Defendants fail to even allege, much less support, that Doug Flad and FladGroup, LLC acted as Lucky Cousins' employees.  Thus, any communications prepared for or including Lucky Cousins, a third party, should be compelled. *Id.*  Moreover, even assuming that these separate legal entities are one for the purposes of the attorney-client privilege, when a "business 'simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'" *Id.* at *4 (citations omitted).  Therefore, in including Doug Flad and FladGroup, LLC, non-lawyers, on their communications, Plaintiff/Counter-Defendants cannot claim that the

11

communications primarily served primarily legal purposes.   As a result, "the email and attachments are not privileged and are discoverable." *Baklid-Kunz*, 2012 WL 5415108, at *4.

This result is bolstered by the fact that Plaintiff/Counter-Defendants claim that Doug Flad "and his companies" have had a "*business* relationship" with Younani, have served as his "*business* advisor," made communications with respect to "*business* strategy," and that Doug Flad's role at Skyline is "*Business* Advisor."   This is because "[a] client claiming the privilege must establish that the communications occurred in connection with the rendition of legal (*not business*) advice, that the communications were between an attorney and the client, and that the communications were intended to be (and were in fact) made in confidence." *U.S. v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1464 (M.D. Fla. 1998) (emphasis added).   Even if from an attorney, business advice "is not protected by the privilege … because the purpose and intent is not to communicate legal advice." *Baklid-Kunz*, 2012 WL 5415108, at *3 (citation and internal marks omitted).   Accordingly, the communications from Doug Flad "and his companies," which admittedly acted as business advisors, must be compelled.   Plaintiff/Counter-Defendants elected to structure their businesses and circulate their documents in this manner, and as a result, must face the consequences.  *In re Seroquel*, 2008 WL 1995058, at *4 (explaining "[t]he structure of certain business enterprises" and "the manner in which they circulate documents" have "consequences that those companies must live with relative to their burden of persuasion when privilege is asserted").

### 3. Plaintiff/Counter-Defendants cannot invoke the work product doctrine for their business communications.

Similarly, to the extent Plaintiff/Counter-Defendants attempt to invoke the work product doctrine, they fail to satisfy their burden.   "The burden of establishing that a document is work product is on the party who asserts the claim." *St. Joe Co. v. Liberty Mut. Ins. Co.*, 305-CV-

1266J-25MCR, 2006 WL 3391208, at *7 (M.D. Fla. Nov. 22, 2006); *see also U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1336 (M.D. Fla. 2007).   The work product doctrine "applies to documents prepared *principally* or *exclusively* to assist in anticipated or ongoing litigation." *Everbank v. Fifth Third Bank*, 3:10-CV-1175-J-12TEM, 2012 WL 1580778, at *2 (M.D. Fla. May 4, 2012) (emphasis added) (citations omitted).   "Documents that would have been prepared in the normal course of business, irrespective of whether or not an attorney was sent a copy, are not privileged as attorney-client communications or work product." *Id.* (citations omitted).   Even if certain documents or communications were "not a usual part" of a company's business, their production should be compelled where they were conceived and designed not for litigation but as part of a "business activity."   *Lockheed Martin Corp.*, 995 F. Supp. at 1465.   Here, Plaintiff/Counter-Defendants claim that Doug Flad "and his companies" have had a "*business* relationship" with Younani, have served as his "*business* advisor," made communications with respect to "*business* strategy," and that Doug Flad's role at Skyline is "*Business* Advisor."   As such, production of these "business" communications must be compelled.

### 4. Plaintiff/Counter-Defendants' overly broad assertion of work product fails.

Regarding Plaintiff/Counter-Defendants' claim that "with respect to *all* communications occurring immediately before and subsequent to QCER's March 8, 2016 termination of Lucky Cousins, the requested communications are work-product," such a general assertion fails.  First, "[t]he mere possibility that a certain event might lead to future litigation does not render privileged all documents prepared subsequent to that event." *U.S. Fid. & Guar. Co.*, 630 F. Supp. 2d at 1337.  Additionally, "the fact a party retains an attorney, or initiates an investigation, or engages in negotiations over a claim is not determinative *per se* as to whether litigation was

anticipated." *Everbank*, 2012 WL 1580778, at *2.  Second, "[t]he Middle District of Florida has recognized the determinative question of the work product privilege is whether the prospect of litigation was the primary motivating purpose behind the creation of a *particular* document." *Id.* at *3 (emphasis added) (internal marks and citations omitted).  Thus, Plaintiff/Counter-Defendants' communications with Doug Flad and FladGroup, LLC even immediately before and subsequent to March 8, 2016, are not immune from discovery.  The primary purpose behind each such communication must be subjected to scrutiny.  At a minimum, the communications immediately before and after March 8, 2016, should be produced with redactions of "comments either made by Defendant's attorneys or other agents that would be reasonably construed as pertaining to legal strategy or legal theory." *Id.* at *4; *see also S. Bell Tel.*, 632 So. 2d at 1385-86 (ordering production but authorizing party to "to redact any notes, thoughts, or impressions of … counsel that are printed directly on the materials").

Plaintiff/Counter-Defendants' vague reference to "[o]ther of the referenced communications occurring before March 8, 2016 [which] are also work product in that they encompass Lucky Cousins' recourse with respect to QCER's conduct" similarly fails to carry Plaintiff/Counter-Defendants' burden of establishing protection.  *See St. Joe Co.*, 2006 WL 3391208, at *7; *U.S. Fid. & Guar. Co.*, 630 F. Supp. 2d at 1336-38.  Such a generalized, oblique invocation of the work product doctrine fails to present the individualized need for protection required for each document and is especially insufficient to the extent the communications are temporally removed from the termination.  *Everbank*, 2012 WL 1580778, at *3; *see also U.S. Fid. & Guar. Co.*, 630 F. Supp. 2d at 1337.

Finally, for all of Plaintiff/Counter-Defendants' communications withheld on the alleged basis of the work product doctrine, several additional considerations should control their

production.   Again, to the extent that Plaintiff/Counter-Defendants are unable to establish by competent evidence that Doug Flad and Flad Group, LLC are in a "business relationship" with Younani and serve as a "Skyline employee," the communications involve third parties and must be disclosed.   *In re Seroquel*, 2008 WL 1995058, at *3.   Additionally, Plaintiff/Counter-Defendants fail to even allege, much less support, that Doug Flad and FladGroup, LLC acted as Lucky Cousins' employees.   To the extent that the alleged work product communications that relate to "Lucky Cousins' recourse" and the "termination of Lucky Cousins" include Lucky Cousins, a third party, as a recipient, they should be compelled.   *Id.*   And, as a fundamental consideration, "[t]he work product privilege only protects documents and tangible things that might reveal the attorney's thought process, but it does not protect the underlying facts obtained through trial preparation." *Geico Cas. Co. v. Beauford*, 805-CV-697-24EAJ, 2006 WL 2789013, at *6 (M.D. Fla. Sept. 26, 2006).   QCER has been stonewalled to date, however, it is entitled to any basic facts underlying the communications at issue, even if a privilege did exist.   And, if work product was created, but it was used to create documents relating to "matter[s] within the ordinary course of business," Plaintiff/Counter-Defendants should be ordered to produce them. *S. Bell Tel.*, 632 So. 2d at 1385-86.[4]

### 5.   Plaintiff/Counter-Defendants' privilege log is deficient.

"It is expected that the party asserting the privilege will satisfy Federal Rule of Civil Procedure 26(b)(5)(A) by identifying the allegedly protected documents in its privilege log." *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 5415108, at *4 (M.D. Fla. Nov. 6, 2012) (citing *Fiore v. Goodyear Tire & Rubber Co.*, 2010 U.S. Dist. LEXIS 122512, at *5 (M.D. Fla. Nov. 3, 2010)).   Further,

---

[4] QCER does not address in detail Plaintiff/Counter-Defendants' final objection regarding confidentiality.   Such a concern can alleviated with the entry of a confidentiality order.  *See Kaiser Aluminum*, 153 F.R.D. at 688.

> [t]he privilege log must contain 'a description of the withheld documents that would be sufficient for the requesting party to assess the privilege and protection claims. Rule 26(b)(5) requires that a privilege log sufficiently describe the privileged documents so as to permit other parties, and the court, to assess the applicability of the privilege.'

*Halifax Hosp. Med. Ctr.*,  2012 WL 5415108, at *4 (quoting *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 2009 WL 331608 (M.D. Fla. Feb. 10, 2009); *Tyne v. Time Warner Entm't Co.*, 212 F.R.D. 596 n. 4 (M.D. Fla. 2002)).

To meet the requirement above,

> the objecting party must provide a log or index of withheld materials that includes for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery.  The party asserting the privilege has the burden of proving the existence of the privilege.

*Horowitch v. Diamond Aircraft Indus., Inc.*, 2007 WL 1192401, at *2 (M.D. Fla. Apr. 23, 2007) (citing *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g*, 230 F.R.D. 688, 695 (M.D. Fla. 2005); *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991)).

Here, Plaintiff/Counter-Defendants' privilege log fails to meet this standard.  Instead of providing an index with the required information, Plaintiff/Counter-Defendants simply provided a spreadsheet listing 2,390 generic "records" of communications, the parties to the communications, the date of the communications, and the privilege claimed.  (*See* Ex. A.)  This privilege "log" fails to include the parties' "capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery," *Horowitch*, 2007 WL 1192401, at *2.   As a result, Plaintiff/Counter-Defendants' have not met their burden to claim a privilege for any of these documents, *id*., and the Court should therefore compel their production.

16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Counsel for QCER has conferred multiple times for several months with counsel for Plaintiff/Counter-Defendants, but counsel for Plaintiff/Counter-Defendants declined to withdraw the objections referenced in this Motion.

WHEREFORE, Defendants and Counter-Plaintiffs request that the Court enter an order compelling Plaintiff/Counter-Defendants to produce documents responsive to the Request for Production, awarding Defendants and Counter-Plaintiffs their reasonable expenses incurred in making the Motion, including attorneys' fees, and granting such other relief as is just and proper.

HOLLAND & KNIGHT LLP

*s/Joseph H. Varner, III*
Joseph H. Varner, III
Florida Bar No. 394904
joe.varner@hklaw.com
Jason H. Baruch
Florida Bar No. 10280
jason.baruch@hklaw.com
Anthony J. Palermo
Florida Bar No. 98716
anthony.palermo@hklaw.com
100 N. Tampa Street, Suite 4100
Tampa, FL  33602-3644
Post Office Box 1288
Tampa, FL  33601-1288
Telephone: (813) 227-8500

*Attorneys for Defendants/Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2017, a true and correct copy of the foregoing Objection and Motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all CM/ECF participants in this case.

*s/Joseph H. Varner, III*

17

#48400616_v1