UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUCKY COUSINS TRUCKING, INC.,

    Plaintiff,

v.                                                  Case No. 8:16-cv-866-RAL-TGW

QC ENERGY RESOURCES TEXAS,
LLC, *et al.*,

    Defendants.
_____/

**DEFENDANTS/COUNTER-PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF UN-REDACTED DOCUMENTS AND
<u>ALL OUTSTANDING RESPONSIVE DOCUMENTS</u>**

Defendants/Counter-Plaintiffs, QC Energy Resources Texas, LLC, QC Energy Resources, LLC, QC Energy Resources, Inc., and Quality Carriers, Inc. (collectively "QCER"), pursuant to Rule 37, Federal Rules of Civil Procedure, and Local Rule 3.04, move for entry of an order compelling Plaintiff/Counter-Defendants, Lucky Cousins Trucking, Inc. ("Plaintiff"), Givo Younani, and Skyline Transport Group, LLC (collectively "Plaintiff/Counter-Defendants") to produce un-redacted documents responsive to QCER's requests for production that Plaintiff/Counter-Defendants did not object to, as well as all other outstanding documents responsive to requests that were not objected to but that have yet to be produced, and awarding QCER its reasonable expenses incurred in making the Motion, including attorneys' fees.

The discovery cut-off in this case is May 1, 2017, but QCER is yet to receive all of the documents responsive to the request for production that it served on Plaintiff/Counter-Defendants over eight months ago. Further, of the production that it has received to date, QCER has found that Plaintiff/Counter-Defendants improperly redacted various payroll and financial

documents that are central to whether Plaintiff/Counter-Defendants breached the agreement between the parties—despite the fact that Plaintiff/Counter-Defendants neither objected to the relevant requests for this information nor did they invoke any privilege or other protection before unilaterally withholding information contained in these documents.

QCER's counsel has patiently conferred numerous times with opposing counsel regarding the outstanding discovery and redactions. Despite its efforts, QCER is forced to again file a motion to compel in order to secure long-promised production and to obtain complete copies of improperly redacted documents.

## Background

1. On July 20, 2016, prior counsel for QCER served their First Request for Production on Plaintiff/Counter-Defendants. A copy of the First Request for Production is attached as "**Exhibit A**."

2. On August 22, 2016, Plaintiff/Counter-Defendants served their Responses and Objections to QCER's First Request for Production. A copy of the Responses and Objections to the First Request for Production is attached as "**Exhibit B**."

3. On August 24, 2016, prior counsel for QCER contacted counsel for Plaintiff/Counter-Defendants to determine when Plaintiff/Counter-Defendants would provide responsive documents and to schedule a "meet and confer" telephone call on certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.

4. On August 26, 2016, prior counsel for QCER again contacted counsel for Plaintiff/Counter-Defendants to determine when Plaintiff/Counter-Defendants would provide responsive documents and to schedule a "meet and confer" telephone call on certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.

5. On August 30, 2016, prior counsel for QCER again contacted counsel for Plaintiff/Counter-Defendants to determine when Plaintiff/Counter-Defendants would provide responsive documents and to schedule a "meet and confer" telephone call on certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production.

6. On August 31, 2016, prior counsel for QCER and counsel for Plaintiff/Counter-Defendants discussed certain objections Plaintiff/Counter-Defendants asserted in response to QCER's First Request for Production. Regarding the numerous requests for which Plaintiff/Counter-Defendants did not assert an objection, counsel for Plaintiff/Counter-Defendants stated that they would soon begin the process of providing responsive documents to QCER on a rolling basis until complete.

7. On September 21, 2016, prior counsel for QCER contacted counsel for Plaintiff/Counter-Defendants regarding when counsel for Plaintiff/Counter-Defendants would begin producing responsive documents and when they anticipated completing production.

8. On September 23, 2016, counsel for Plaintiff/Counter-Defendants explained that they would begin production on or before October 10, 2016, and should have the production "substantially complete" by the end of October.

9. On September 23, 2016, undersigned counsel assumed the representation of QCER in this matter.

10. On October 12, 2016, undersigned counsel contacted counsel for Plaintiff/Counter-Defendants regarding when counsel for Plaintiff/Counter-Defendants would begin the production that counsel for Plaintiff/Counter-Defendants said would begin on October 10, 2016.

11. On October 13, 2016, counsel for Plaintiff/Counter-Defendants responded and

explained that they would start a rolling production beginning the next week and that someone in their office would forward the relevant authorities in the next day or two.

12.     On October 21, 2016, undersigned counsel again contacted counsel for Plaintiff/Counter-Defendants regarding the outstanding production yet to begin.

13.     On October 25, 2016, counsel for Plaintiff/Counter-Defendants made their first, limited production of 105 pages of documents.

14.     On October 27, 2016, counsel for Plaintiff/Counter-Defendants made their second production of 321 pages of documents.

15.     On October 31, 2016, counsel for Plaintiff/Counter-Defendants produced 114 pages of documents.

16.     On November 4, 2016, Plaintiff/Counter-Defendants produced 2,409 documents.

17.     On November 8, 2016, QCER served a Subpoena to Produce Documents on FladGroup, LLC.

18.     On November 22, 2016, FladGroup, LLC served its objections to the Subpoena to Produce Documents. FladGroup, LLC retained the same counsel representing Plaintiff/Counter-Defendants, and FladGroup, LLC's objections mirrored an objection found in Plaintiff/Counter-Defendants' responses to QCER's request for production.

19.     On December 2, 2016, counsel for QCER contacted counsel for Plaintiff/Counter-Defendants regarding whether Plaintiff/Counter-Defendants had completed their production of documents responsive to QCER's First Request for Production.

20.     On December 13, 2016, QCER filed a Motion to Compel Production of Documents. (Doc. 54.)

21.     Counsel for Plaintiff/Counter-Defendants did not respond to counsel for QCER's

December 2, 2016 inquiry into whether Plaintiff/Counter-Defendants completed their production, but stated in their response in opposition to QCER's motion to compel that "Counter-Defendants continue to gather and prepare responsive documents for production." (Doc. 57, ¶ 8.)

22. On January 26, 2017, after noting that the parties agreed to narrow the request at issue in the motion to compel through the use of search terms, the Court ruled in relevant part, "With respect to the e-mail account searches that are conducted, the materials and a privilege log must be produced by February 24, 2017." (Doc. 61 at 2.)[1]

23. On February 13, 2017, counsel for QCER again contacted counsel for Plaintiff/Counter-Defendants regarding the outstanding production responsive to all document requests to which Plaintiff/Counter-Defendants did not object and that Plaintiff/Counter-Defendants represented to the Court that they were in the process of making.

24. On February 23, 2017, counsel for Plaintiff/Counter-Defendants responded that "[r]ight now, we're working on squaring up the … documents that are at issue under the recent court order. Once we get you that production, we'll turn back to producing anything else that's outstanding under other discovery requests for which we agreed to produce. … Realistically, we should have everything produced by March 15."

25. On February 24, 2017, Plaintiff/Counter-Defendants produced 15,918 documents in response to the Court's Order.

26. On March 14, 2017, QCER's counsel contacted counsel for Plaintiff/Counter-Defendants requesting un-redacted copies of various documents in Plaintiff/Counter-Defendants' production that had been redacted without explanation or prior objection. A copy of the redacted

---

[1] Plaintiff/Counter-Defendants, however, continue to withhold a substantial number of documents based on claims of privilege, which QCER has addressed by way of a separate motion to compel. (*See* Doc. 64.)

documents are attached as "**Exhibit C**."

27. On March 15, 2017, counsel for Plaintiff/Counter-Defendants stated that they would "look into the redacted issue" and "will have an answer for you on that by Monday re whether or not we can simply produce to you unredacted versions."

28. Plaintiff/Counter-Defendants still have yet to complete their production related to the outstanding discovery requests from July 20, 2016, nor have they responded to QCER's counsel's request for un-redacted copies of relevant documents, and discovery is scheduled to close on May 1, 2017.

## MEMORANDUM OF LEGAL AUTHORITY

"Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide proper response to requests for production of documents under Rule 34." *Local Access, LLC v. Peerless Network, Inc.*, No. 6:14-CV-399-ORL-40, 2015 WL 5687867, at *2 (M.D. Fla. Sept. 25, 2015). Plaintiff/Counter-Defendants have refused to comply with their discovery obligations responsive to the requests below, among others.[2]

### QCER's Request for Production

29. All documents which establish the factual bases for, tend to prove, or support Lucky Cousins' allegation that Lucky Cousins "remained in a position to make payroll," as alleged in paragraph 235 of the First Amended Complaint.

### Plaintiff/Counter-Defendants' Response

---

[2] The Local Rules of the United States District Court for the Middle District of Florida require a motion to compel to "include quotation in full of each" request for production at issue, "each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party; … immediately followed by a statement of the reason the motion should be granted." Local Rule 3.04(a). QCER quotes in full the requests that appear most relevant to Plaintiff/Counter-Defendants' improper redactions in the event that Plaintiff/Counter-Defendants redactions can be considered an objection to complete production, despite Plaintiff/Counter-Defendants' failure to object or invoke any privilege or other protection in its Responses and Objections to QCER's First Request for Production. QCER, however, does not quote in full all of the other of the 101 requests for production that Plaintiff/Counter-Defendants did not object to but for which Plaintiff/Counter-Defendants have not yet provided all responsive documents. QCER has instead attached these as exhibits to the motion. (*See* Exs. A, B.)

Plaintiff/Counter-Defendants will produce all non-privileged responsive documents.

**QCER's Request for Production**

30. All documents relating to or evidencing any deferred compensation paid or owed to Lucky Cousins' employees, contractors, principals, or agents.

**Plaintiff/Counter-Defendants' Response**

Plaintiff/Counter-Defendants will produce all non-privileged responsive documents.

**QCER's Request for Production**

31. All documents relating to or evidencing any voluntary or involuntary compensation reductions taken by Lucky Cousins' employees, contractors, principals, or agents.

**Plaintiff/Counter-Defendants' Response**

Plaintiff/Counter-Defendants will produce all non-privileged responsive documents.

**QCER's Request for Production**

33. All financial statements, including balance sheets, income statements, and statements of cash flows, prepared by or for Lucky Cousins for any period in 2014, 2015, and 2016.

**Plaintiff/Counter-Defendants' Response**

Plaintiff/Counter-Defendants will produce all non-privileged responsive documents.

**QCER's Request for Production**

35. Documents sufficient to show Lucky Cousins' revenues and Skyline Transport's revenues from March 8, 2016 to the date of production in response to this First Request for Production.

**Plaintiff/Counter-Defendants' Response**

Plaintiff/Counter-Defendants will produce all non-privileged responsive documents.

### **Reasons to Compel Production**

Plaintiff/Counter-Defendants did not object to the above requests relating to Plaintiff's revenues, financial statements, and payroll. Surprisingly, however, Plaintiff heavily redacted documents responsive to these requests. Because Plaintiff/Counter-Defendants failed to object before withholding relevant information, the Court should compel the production of these and any other improperly redacted documents in un-redacted form. Further, even if Plaintiff/Counter-Defendants had not waived any basis for redacting the documents by failing to object, as well as failing to provide a privilege log, un-redacted copies of these documents should be compelled based upon their clear relevance to the claims at issue. Finally, given Plaintiff/Counter-Defendants' failure to fulfill their discovery obligations over the past eight months and the impending discovery cut-off, the Court should compel the immediate production of all other documents in Plaintiff/Counter-Defendants' possession, custody, or control that are responsive to discovery requests for which Plaintiff/Counter-Defendants did not object.

1. **Plaintiff/Counter-Defendants waived any basis for redacting the documents.**

Plaintiff/Counter-Defendants have failed to explain why they redacted the attached documents that they produced months after they served their responses and objections to QCER's First Request for Production—which did not contain any relevant objections, limitations, or basis for withholding the redacted information. Plaintiff/Counter-Defendants' failure to timely object constitutes a waiver.

Regarding untimely objections, the Middle District's Discovery Handbook provides: "Absent compelling circumstances, failure to assert an objection to a request for production within the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel." MIDDLE DISTRICT DISCOVERY, A

Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida § III(A)(6) (June 5, 2015). Similarly, regarding belated attempts to withhold information without timely invocation of privilege or other protection, the Middle District's Discovery Handbook provides: "Withholding materials without notice is contrary to Rule 26 and may result in sanctions." *Id.* at § VI(A)(1). Plaintiff/Counter-Defendants' unilateral, untimely, and unannounced redactions run contrary to established discovery practice in the Middle District, the Federal Rules of Civil Procedure, and—as discussed below—relevant case law. Full production should therefore be compelled.

Federal district courts properly compel the complete production of improperly redacted documents where a party redacts information without previously asserting a relevant objection or invoking a privilege or other protection. In *Stovall v. Mrs Bpo, LLC*, the U.S. District Court for the Middle District of Florida compelled the plaintiff to produce an un-redacted copy of a telephone log that plaintiff redacted based on what plaintiff "believe[d] to be the lack of relevancy" of it. *Stovall v. Mrs Bpo, LLC*, 611CV941ORL28DAB, 2012 WL 12898983, at *2 (M.D. Fla. July 30, 2012). The Court found that plaintiff had waived any assertion of privilege or other basis for redaction of information where plaintiff "completely fail[ed] to justify the lack of proper protocol in unilaterally redacting the document." *Id.* According to the Court:

> Under Rule 26(b)(5), '[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents' not produced in a manner that 'will enable other parties to assess the claim.' Fed. R. Civ. P. 26(b)(5). Though Plaintiff redacted the phone numbers on the Telephone Log, he indisputably failed to make any claim of privilege and failed to describe why the information redacted was privileged. **Plaintiff has waived any claim of privilege at this late date.**

*Stovall*, 2012 WL 12898983, at *2 (emphasis added). Although plaintiff could have sought a protective order had he raised the issue previously, he failed to indicate the basis for the

9

redactions or why the withheld information might be privileged or otherwise immune from discovery prior to unilaterally redacting it. *Id.* As a result, the Court compelled production of the document in un-redacted form.

Similarly, in *Bailey Industries, Inc. v. CLJP, Inc.*, the responding party had "state[d] no objection and provide[d] no explanation for the redactions" and "the time for asserting an objection had passed." 270 F.R.D. 662, 667 (N.D. Fla. 2010). As a result, the Court "conclude[d] that any objection to [the] invoice request on the basis of 'proprietary information' or 'trade secret' is deemed waived." *Id.* at 667–68. Citing the Federal Rules of Civil Procedure, the Advisory Committee Notes thereto, and precedent from the Fifth Circuit Court of Appeals and the Eleventh Circuit Court of Appeals, the Court explained that, "[a]s a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived." *Id.* at 668 (citations omitted). Accordingly, the responding party had "waived any objection" to the discovery request, and the motion to compel an un-redacted production was "due to be granted on this basis alone." *Id.*

Plaintiff/Counter-Defendants failed to provide the basis for their redactions prior to withholding information in their production. Plaintiff/Counter-Defendants cannot now attempt to excuse their improper redactions on the eve of the close of discovery. They have waived their right to come forward with any basis for failing to fully respond to QCER's July 20, 2016 discovery requests, and the Court should compel a complete production.[3]

**2. Even if Plaintiff/Counter-Defendants had not waived their objections to full**

---

[3] QCER requests the full production of un-redacted copies of any other responsive documents that were redacted without timely notice. Because Plaintiff/Counter-Defendants only recently provided the bulk of their production in response to this Court's Order on QCER's prior motion to compel, QCER has not yet been able to review all of the production for other improper redactions. Thus, through this motion, QCER seeks to compel full production of any other documents that have been redacted by Plaintiff/Counter-Defendants without (1) prior objection or invocation of a privilege or other protection in Plaintiff/Counter-Defendants' responses to QCER's request for production and (2) entry on Plaintiff/Counter-Defendants' recently produced privilege log.

> **production, the redacted portions of the documents are relevant, and any belated concerns can be alleviated through a confidentiality order.**

While the Court need not even consider the merits of any untimely arguments put forth by Plaintiff/Counter-Defendants in support of their redactions, *Bailey Industries, Inc. v. CLJP, Inc.*, 270 F.R.D. at 668-69, QCER will address the relevancy of the withheld information in an abundance of caution—though its attempt to fully explain the relevance of the information is admittedly limited by the fact that Plaintiff/Counter-Defendants have kept the contents from QCER.

In addressing the relevancy of the redacted information, QCER's burden is limited. The threshold for determining whether discovery is relevant is "relatively low." *Moore v. Lender Processing Services Inc.*, 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013) (internal quotations and citations omitted). "Courts construe relevancy 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Additionally, "[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Moore*, 2013 WL 2447948, at *2 (citing *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991)). The pleadings of both Plaintiff and QCER reveal the relevance of the redacted documents.

The Contractor Agreement at issue between the parties authorized QC Energy Resources Texas, LLC and QC Energy Resources, LLC to terminate Plaintiff immediately with no opportunity to cure in the event of Plaintiff's intentional misconduct, fraudulent acts, or insolvency. (Doc. 11, Ex. 2 at § 16(a).)[4] In its complaint against QC Energy Resources Texas,

---

[4] Based on the pleadings, it is undisputed that, between June 2014 and June 2015, Plaintiff entered into a Contractor Agreement and several amendments thereto with QC Energy Resources Texas, LLC and QC Energy Resources, LLC, and Plaintiff provided transportation services to QC Energy Resources Texas, LLC's and QC Energy

11

LLC and QC Energy Resources, LLC, Plaintiff asserts a claim for breach of contract based upon its claim that it was unjustifiably terminated by QC Energy Resources Texas, LLC and QC Energy Resources, LLC at a time when it "was not financially insolvent" and had not "otherwise materially breached" the Contractor Agreement. (Doc. 18, ¶¶ 168-169.) Plaintiff also repeatedly alleges that QC Energy Resources, LLC's employee defamed Plaintiff by stating that Plaintiff was "bankrupt" and "could not make payroll" around the time that QC Energy Resources Texas, LLC and QC Energy Resources, LLC terminated the Contractor Agreement. (*Id.* at ¶¶ 123, 133, 136, 231-243.)

QC Energy Resources Texas, LLC and QC Energy Resources, LLC raise multiple affirmative defenses that assert that Plaintiff first breached the Contractor Agreement and that their alleged defamatory statements about Plaintiff's solvency and ability to make payroll, if any, were true. (Doc. 32 at 20, 24.) Additionally, in its Counterclaim, QCER alleges that Plaintiff was unable to make payroll, and that—coupled with Plaintiff's insolvency—Plaintiff engaged in intentional misconduct and fraudulent acts by first establishing a competing trucking company while under an exclusive agreement with QC Energy Resources Texas, LLC and QC Energy Resources, LLC and then denying involvement once it was discovered. (Doc. 11, ¶¶ 58-65.) As a result, QC Energy Resources Texas, LLC and QC Energy Resources, LLC were not only justified in immediately terminating the contract, they also have a claim for breach of contract for Plaintiff's violations of the restrictive covenants in the contract. (*Id.* at ¶¶ 67, 72-110.)

In response, Plaintiff again relies upon its professed solvency and purported compliance with the Contractor Agreement to assert an affirmative defenses of prior breach. Plaintiff claims it "had not engaged in any intentional misconduct or fraudulent acts" and it was "also not

---

Resources, LLC's customers thereunder. (Doc. 11, ¶¶ 28, 32, 35, Ex. 2; Doc. 20, ¶¶ 28, 32, 35; *see also* Doc. 20 at 15 ("The Contractor Agreement is therefore the last contract executed by Lucky Cousins…."); Doc. 18, ¶¶ 1, 3, 14, 40-41, 173, 184, 201.)

12

insolvent at the time of termination." (Doc. 20 at 12.) Thus, Plaintiff claims that QC Energy Resources Texas, LLC and QC Energy Resources, LLC "materially breached the Agreement because it did not have grounds to terminate the Agreement" and that, due to their "prior breach," they "cannot enforce the restrictive covenants against" Plaintiff. (*Id.*)

Thus, the information withheld from the heavily redacted documents—a financial statement from Plaintiff's bank and a payroll report—is patently relevant to the claims and defenses of both Plaintiff and QCER. Un-redacted copies of the documents will shed light upon whether Plaintiff was indeed solvent and could make payroll as required under the Contractor Agreement, as well as provide insight into who was paying Plaintiff and whom Plaintiff was paying around the time of the termination of the contract—information that will undoubtedly prove or disprove claims related to the non-competition and non-solicitation provisions in the Contractor Agreement.[5] As it stands, however, Plaintiff has inexplicably redacted this relevant information. The redacted information encompasses matters that bear on, or that reasonably could lead to matters that could bear on, issues that are or may be in the case; as a result, the Court should compel production of the documents without redactions. *Bailey Indus., Inc.*, 270 F.R.D. at 668 (compelling production of invoices without redactions given their relevance to party's counterclaims about competitors soliciting customers or making sales in protected markets in violation of contract); *see also Moore*, 2013 WL 2447948, at *2.

To the extent that Plaintiff/Counter-Defendants have any legitimate concerns about confidentiality, a confidentiality order or protective agreement "easily could be in place" that would "alleviate any concern." *Bailey Indus., Inc.*, 270 F.R.D. at 669; *see also Kaiser Aluminum & Chem. Corp. v. Phosphate Eng'g & Const. Co., Inc.*, 153 F.R.D. 686, 688 (M.D. Fla. 1994);

---

[5] At the very least, the un-redacted payroll report and financial statement will provide information that can reveal the identities of important witnesses in the case, further justifying production. *See Kallas v. Carnival Corp.*, 06-20115-CIV, 2007 WL 2819385, at *2 (S.D. Fla. Sept. 25, 2007).

*Kallas*, 2007 WL 2819385, at *2. As such, the Court should compel production regardless of any untimely complaints of confidentiality that Plaintiff/Counter-Defendants might make.

3. **In light of the time that has passed service of the initial request, and Plaintiff/Counter-Defendants' inordinate delays, Plaintiff/Counter-Defendants should be compelled to immediately fulfill their discovery obligations and complete their overdue production.**

As counsel for Plaintiff/Counter-Defendants explained in response to QCER's prior motion to compel, Plaintiff/Counter-Defendants only objected in full or in part to three of QCER's requests for production. (Doc. 57, ¶¶ 3-4.)[6] As counsel for Plaintiff/Counter-Defendants has also explained, however, Plaintiff/Counter-Defendants have not produced responsive documents that are "outstanding under [the] other discovery requests for which [they] agreed to produce." (*Supra* ¶ 24.)[7]

In addition to not yet completing their production in response to requests to which they did not object when they served their response over seven months ago, Plaintiff/Counter-Defendants provided the vast bulk of their production only recently in response to the Court's Order on QCER's prior motion to compel. (*Supra* ¶¶ 13-16, 25.) Discovery is scheduled to close on May 1, 2017, yet QCER is still unable to schedule depositions as it has not received all of Plaintiff/Counter-Defendants' responsive documents. Further, QCER is being forced to undergo a significant, last-minute document review in order to prepare for depositions as a result of Plaintiff/Counter-Defendants' long delayed and still incomplete production in response to QCER's July 20, 2016 document requests. Plaintiff/Counter-Defendants' failure to comply with their discovery obligations in a reasonable time has thus prejudiced QCER and hindered its trial

---

[6] Of the three objections, one is the subject of a pending Renewed Motion to Compel filed by QCER. (*See* Doc. 64.)
[7] Pursuant to the Middle District's Discovery Handbook, counsel for QCER refrains from filing with the Court the correspondence exchanged between the undersigned and opposing counsel, but QCER will of course provide the correspondence to the Court if the Court deems it necessary for the presentation and consideration of this motion. MIDDLE DISTRICT DISCOVERY, A HANDBOOK ON CIVIL DISCOVERY PRACTICE IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA § I(C)(1) (June 5, 2015).

preparation.

Plaintiff/Counter-Defendants should therefore be compelled to promptly produce all documents in their possession, custody, or control responsive to QCER's requests for production for which Plaintiff/Counter-Defendants did not object. *See Duncanson v. Wine & Canvas Dev., LLC*, 614CV704ORL40KRS, 2015 WL 12838835, at *2 (M.D. Fla. Mar. 20, 2015) (compelling production of all documents in parties' possession, custody, or control responsive to document requests for which parties did not timely respond to the discovery requests at issue and thus waived their objections to the requests subject to the motion to compel). As Plaintiff/Counter-Defendants did not object to production over seven months ago when they responded to the document requests, the overdue production should be compelled immediately. *See id.* Additionally, to the extent that Plaintiff/Counter-Defendants fail to produce all of the responsive documents in their possession, custody, or control, they should be prohibited from using any information not produced to supply evidence on any subsequent motion, hearing, or at trial. Fed. R. Civ. P. 37(c)(1); *see also, e.g.,* Ex. A, Req. 95-98, 104; Ex. B, Resp. 95-98, 104; *Duncanson*, 2015 WL 12838835, at *2 (explaining "[f]ailure to comply with this order may result in sanctions.") (citations omitted).

## Conclusion

QCER served its document requests on July 20, 2016, and Plaintiff/Counter-Defendants did not object to the overwhelming majority of the requests and have even withdrawn several objections since. Despite repeatedly promising to complete their production in response to QCER's diligent inquiry, Plaintiff/Counter-Defendants have improperly redacted various documents and failed to fulfill their discovery obligations regarding QCER's document requests. As a result, this Court should compel production.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

QCER has conferred multiple times for several months with Plaintiff/Counter-Defendants, but Plaintiff/Counter-Defendants have not agreed to provide un-redacted copies of their production nor have they completed their production, despite multiple requests from QCER for the full production and various promised timeframes for completion from Plaintiff/Counter-Defendants.

WHEREFORE, QCER requests that the Court enter an order (1) compelling full production in un-redacted form of any other documents that have been redacted by Plaintiff/Counter-Defendants without prior objection or invocation of a privilege or other protection in Plaintiff/Counter-Defendants' responses to QCER's request for production and entry on Plaintiff/Counter-Defendants' recently produced privilege log; (2) compelling Plaintiff/Counter-Defendants compelling Plaintiff/Counter-Defendants to produce all documents in their possession, custody, or control responsive to QCER's requests for production for which Plaintiff/Counter-Defendants did not object; (3) prohibiting Plaintiff/Counter-Defendants from using any information not produced to supply evidence on any subsequent motion, hearing, or at trial to the extent that Plaintiff/Counter-Defendants fail to produce all of the responsive documents in their possession, custody, or control; (4) awarding Defendants and Counter-Plaintiffs their reasonable expenses incurred in making the Motion, including attorneys' fees; and (5) granting such other relief as is just and proper.

HOLLAND & KNIGHT LLP

*s/Joseph H. Varner, III*
Joseph H. Varner, III
Florida Bar No. 394904
joe.varner@hklaw.com
Anthony J. Palermo
Florida Bar No. 98716

16

anthony.palermo@hklaw.com
100 N. Tampa Street, Suite 4100
Tampa, FL 33602-3644
Post Office Box 1288
Tampa, FL 33601-1288
Telephone: (813) 227-8500

*Attorneys for Defendants/Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 24, 2017, a true and correct copy of the foregoing Objection and Motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all CM/ECF participants in this case.

*s/Joseph H. Varner, III*

#48400616_v1