## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LUCKY COUSINS TRUCKING INC.,**

Plaintiff,

v.

**QC ENERGY RESOURCES
TEXAS, LLC and QC ENERGY
RESOURCES, LLC,**

         **CASE NO. 8:16-cv-866-T-26TGW**

Defendants.
_____/

**QC ENERGY RESOURCES
TEXAS, LLC, QC ENERGY
RESOURCES, LLC, QC ENERGY
RESOURCES, INC. and
QUALITY CARRIERS, INC.,**

Counter-Plaintiffs,

v.

**LUCKY COUSINS TRUCKING INC.,
GIVO YOUNANI and SKYLINE
TRANSPORT GROUP, LLC,**

Counter-Defendants.
_____/

## PLAINTIFF / COUNTER-DEFENDANTS'
## <u>MOTION TO VACATE REFERENCE TO MAGISTRATE JUDGE</u>

Plaintiff / Counter-Defendant Lucky Cousins Trucking, Inc., and Counter-Defendants,

Givo Younani and Skyline Transport Group, LLC, (collectively "Lucky"), file this Motion to

Vacate Reference to Magistrate Judge and in support state as follows:

## INTRODUCTION

This Motion arises in part from a dispute over the propriety of Lucky's objections to the production of privileged communications between Counter-Defendant Givo Younani and Doug Flad. This is not a standard discovery dispute. Mr. Flad, involved with this litigation since inception, is as an agent of Mr. Younani. In this capacity, Mr. Flad has been relied on to facilitate communications to Lucky and the undersigned counsel. During a January 26, 2017, hearing, Magistrate Judge Wilson admonished Lucky's counsel and threatened sanctions for the purported improvident withholding of documents as privileged. Lucky had done nothing wrong. Indeed, Lucky had produced more than 18,000 documents and provided a privilege log as well as a categorical explanation of what was withheld as privileged. Without properly meeting and conferring, and while refusing to produce a single document to Lucky, QCER[1] filed Motions to Compel, among other things, Mr. Younani's communications with Mr. Flad. Rulings on those Motions to Compel will have a tremendous impact on this matter. As such, Lucky seeks to revoke its consent to submission of discovery disputes the Magistrate Judge and respectfully requests that the District Court resolve all present and future discovery disputes in this matter.

## BACKGROUND

On June 27, 2016, the Parties filed their Case Management Report. (DE 28). Therein, the Parties declined to consent to final resolution of this matter before a Magistrate Judge. (*Id*. at p. 8). The Parties did, however, "consent to the jurisdiction of the United States Magistrate Judge for the resolution of discovery matters only." *Id*.

---

[1] Throughout this Motion, "QCER" refers to: QC Energy Resources Texas, LLC; QC Energy Resources, LLC; QC Energy Resources, Inc.; and Quality Carriers, Inc., collectively.

On July 20, 2016, QCER served Lucky with an aggressive set of 104 document requests. Lucky objected to only five of those requests. (*See* DE 79).  Two of those objections were withdrawn following a conferral with opposing counsel. A point of contention became Request #73, which seeks:

> All communications between Lucky Cousins, Skyline Transport, or Mr. Younani and Flad Group, LLC, or any employees of representatives thereof, including but not limited to Doug Flad, since June 14, 2014.

Essentially, QCER wanted all communications between Mr. Younani and Mr. Flad (whether through agents, representatives, employees, or various corporate forms). Lucky objected to this request as overbroad and unduly burdensome and invoked attorney client privilege and the work product doctrine.  QCER refused to narrow the scope of this request. A hearing was held on January 26, 2017, before Magistrate Judge Wilson. Although Lucky's underlying objections had not been ruled on, and despite Lucky's creation of search terms to narrow the scope of responsive materials, Judge Wilson stated as follows:

> Here's the point: And if I need to, I have on occasion, it's been rare, but if I see frivolous attorney-client privilege, I impose sanctions for that.

> (DE 79-2, at p. 21:21).

This statement does not exist in a vacuum. Emboldened by the Magistrate Judge's unilateral threat of sanctions against the undersigned (who has never been sanctioned), QCER began to employ exploitative discovery processes while simultaneously threatening Lucky with sanctions. Indeed, QCER makes direct reference to the Magistrate's "oral admonition regarding [Lucky's] spurious privilege claims" in its Renewed Motion to Compel. (DE 64 at p. 2). Lucky's claim of privilege is not spurious. As detailed below, invocation of privilege is the appropriate

3

method for protecting communications between Messrs. Flad, Younani, the undersigned law firm, and other lawyers regarding separate and wholly unrelated matters.

To be clear: Lucky does not assert that Magistrate Judge Wilson is biased. The instant motion is not a veiled attempt at recusal and Magistrate Judge Wilson has not entered an adverse ruling against Lucky. Instead, Lucky's position is that due to the complex nature of this case, the unique nature of the dispute over Request #73, and QCER's repeated bad faith conduct, it is necessary that District Judge Lazzara hear all matters related to this litigation.

On April 7, 2017, Lucky filed pointed oppositions to QCER's Motions to Compel (collectively "Oppositions"). (*See* DE 79; DE 80). Therein, Lucky stated that a recent line of filings by QCER was focused more on burdening Lucky with litigation costs than pushing this matter towards resolution.  Lucky detailed the factual predicate and legal basis for this position. (*See* DE 79, p. 2-8).

On April 13, 2017, QCER filed a Reply in Support of Motions to Compel. The Reply failed to adequately address the legal and factual bases for Lucky's Opposition. Instead, QCER used irrelevant cites to the undersigned's social media posts to paint a picture of Lucky and the undersigned that is both inaccurate and prejudicial to the resolution of current and future discovery disputes between the Parties.

## MEMORANDUM OF LEGAL AUTHORITY

This Court has inherent authority to vacate reference to the Magistrate Judge for good cause. *See Paddington Partners v. Bouchard*, 950 F. Supp. 87, 89 (S.D.N.Y. 1996) (citations omitted); *see also Wharton-Thomas v. United States*, 721 F.2d 922, 927 (3d Cir. 1983) ("Even consensual reference of a case to a magistrate may be vacated by a district judge[.]"). Indeed, a cornerstone of the Federal Magistrate Act's constitutionality is that the "district court retains

sufficient control over the magistrate." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1323 (11th Cir. 2013) (quoting *Sinclair v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir. 1987)).

## I.  QCER's Conduct Warrants Vacation of the Referral of Discovery Matters

Strangely, QCER's Reply contains statements culled from the undersigned's social media presence. (DE 89 at p.4). These statements reflect the undersigned's opinions based on considerable experience litigating non-compete and trade secret cases, quite frequently against much larger firms. Specifically, QCER points to statements pertaining to a matter involving the undersigned firm and the law firm Proskauer Rose. The statements cited by QCER that pertain to Proskauer Rose are an accurate, albeit colloquial, representation of that litigation's outcome.[2] Contrary to QCER's representations, the undersigned's posts do not represent a disdain for all large firms.  Rather, the undersigned's posts are critical of specific large firms, and then based only on their specific conduct.  With respect to this litigation, any press releases or social media statements pertaining to this litigation are directly in line with Lucky's filings before this Court (*e.g.* arguing the non-competes are unenforceable and saying Lucky will prevail at trial).

QCER's Reply also included a footnote describing Lucky's intent to file this Motion—a fact known to QCER due to Lucky's compliance with Local Rule 3.01(g). (*See* DE 89, p. 2, n. 2 (citing *Moon v. Med. Tech. Associates, Inc., Case No. 8:13-cv-02782*, 2014 WL 5302565 (M.D. Fla. Oct. 17, 2014)).  QCER stated "[t]his will not be counsel's first attempt to unseat a presiding

---

[2] The statement referred to multi-front litigation between nurse staffing companies in which the undersigned and colleagues repeatedly prevailed over Proskauer Rose. *See e.g.., Silva, Davis, Houseweart, et al v. Nightingale Nurses, LLC, et al*, Case No. 4D17-0032 (4th DCA Feb. 14, 2017) (granting appellant's motion for stay of contempt orders pending appeal); *ESP Systems, LLC v. Nightingale Nurses, LLC*, Case No. 16-81263-CIV-ZLOCH (S.D. Fla. Feb. 23, 2017) (DE 23, denying motion to dismiss Lanham Act and FDUTPA claims).

judge in the Middle District." *Id*. This is not only a blatant attempt to color the Court's perception of Lucky and its counsel, it is an incomplete rendition of the facts and outcome of *Moon*.

In *Moon*, the undersigned represented the Moon family and successfully appealed the trial court's grant of a preliminary injunction.  *See Moon v. Med. Tech. Associates Inc.*, 577 F. App'x 934, 936 (11th Cir. 2014) ("[T]he district court's order—which MTA drafted—includes almost five pages of factual findings. However, many of these facts are disputed by the parties' conflicting affidavits . . . Despite these conflicts, the court's order neither references the Plaintiff's affidavits, nor explains why the Plaintiff's affidavits are not credible.").  It was against this backdrop that the undersigned moved for recusal.  In denying the motion to recuse, the trial court recognized counsel's concerns and made clear that its earlier ruling had been a product of pure legal error, not bias. On remand, the trial court denied the renewed request for a preliminary injunction, granted partial summary judgment in the Moon's favor and denied the counter-plaintiff's request for summary judgment in its entirety.[3]

Here, Lucky opposed QCER's Motions to Compel and provided a detailed account of QCER's conduct, including conduct that violates both the letter and spirit of the Local Rules (and constitutes a general abuse of the discovery process).  In response, rather than sticking to the merits of the instant discovery dispute, QCER set out to turn the Court against the undersigned because he posts on LinkedIn about besting large law firms and once moved to recuse a judge in this District.  QCER has run away from the merits of the instant dispute.  The reason for this is plain. QCER has nothing better to offer. QCER cannot deny its disregard for Local Rule 3.01(g) and has

---

[3] *See Moon, et al v. Med. Tech. Associates Inc.*, Case No. 8:13-cv-02782-EAK-EAJ (M.D. Fla. 2014) (DE 125, Denying Request for Preliminary Judgment; DE 128, Granting in Part Plaintiffs' Motion for Partial Summary Judgment; DE 129, Denying Defendant's Motion for Partial Summary Judgment).

no other grounds to refute the arguments made in Lucky's Oppositions.  QCER's strange tack in litigating this discovery matter exemplifies the need for the District Judge to resolve all pending and future discovery disputes.

## II.    The Posture of this Case Justifies Vacation of Reference to the Magistrate

In the instant discovery dispute, Lucky's privilege claim was proper. Documents were held back as privileged because Mr. Flad is Mr. Younani's agent and the communications between the two involve, e.g., litigation strategy, damage calculations, and annotations of court documents. *See Every Penny Counts, Inc. v. American Exp. Co.*, No. 8:07-cv-1255-T-26MAP, 20008 WL 2074407, at *1 (M.D. Fla. 15, 2008) (holding that work product doctrine may apply to nonlawyers affiliated with a party where the nonlawyers had a consulting agreement with party and were privy to party's confidential information*); U.S. v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) (citing *People v. Osorio*, 549 N.E.2d 1183, 1183 (N.Y. 1989) ("[C]ommunications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication, generally will be privileged."). Moreover, while Mr. Flad is by no means an attorney, his communications were vital to the provision of effective service to Mr. Younani. *See U.S. v. Kovel*, 296 F.2d 918, 921  (2d Cir. 1961) ("In contrast to the Tudor times when the privilege was first recognized . . . complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others[.]"; *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *3 (S.D.N.Y. April 17, 2006) ("[A]n agent, such as a financial advisors, may have communications with an attorney that are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer[.]") (internal citation omitted).

The law is clear. The cases cited above were contained in briefing provided to the Court in advance of the January 26, 2017 hearing. (DE 57 at p.7). This is why Magistrate Judge Wilson's remarks pertaining to sanctions are troubling. Even if the privilege matter was ripe, which it was not, the law supports Lucky's position that the communications held back were indeed privileged.

Rulings on QCER's pending Motions to Compel will have a significant impact on this case's resolution. (*See* DE 64 and 69). The scope of attorney client privilege and the work product doctrine, as well as specificity requirements of a privilege log are at issue. At first blush, these appear to be routine disputes. They are not. Simultaneously, QCER seeks information that strikes at the heart of the purpose of privilege and demands overly detailed privilege logs for hundreds of communications between Lucky and its counsel. Adverse rulings may tilt this matter in QCER's favor due to cost rather than the merits.

There is also a distinct possibility that if the reference is not vacated, existing precedent on privilege will be pared and privilege log requirements enhanced for future Middle District litigants. Thus, in addition to complex and costly, the discovery process in this matter stands to negatively impact Middle District litigation long after this matter is resolved. As such, reference to the Magistrate Judge of the instant discovery dispute regarding QCER's Motions to Compel should be vacated and future discovery disputes resolved before the District Court Judge.

### III.    <u>The Court Has Inherent Authority to Vacate Reference to the Magistrate</u>

Court's may look to the "whether the interests of justice would be best served by holding a party to his consent" when determining whether to vacate reference to a magistrate. *See Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir. 1987) (affirming denial of plaintiff's motion to withdraw consent to trial before a magistrate) (citing *Parks v. Collins*, 736 F.2d 313 (5th Cir. 1984)).

Here, there are minimal countervailing reasons for allowing discovery disputes to proceed before Magistrate Judge Wilson. The District Court is directly involved in all other aspects of this case (*see* DE 53), and the remaining issues have the potential to dramatically alter the course of litigation.  Lucky has nearly completed its document production. Taken together, these facts demonstrate that vacating the reference to the Magistrate would not unnecessarily delay this matter's resolution. To the contrary, such an approach streamlines the discovery process and pushes this matter closer to resolution on the merits. *See Jackson v. Rohm & Haas Co.*, No. CIV.A. 05-4988, 2009 WL 773938, at *3 (E.D. Pa. Mar. 19, 2009) (recognizing that good cause to vacate referral exists when proceedings before the magistrate have inadvertently hampered timely resolution of litigation and stating "I would be prepared to vacate a reference in any situation in which it had become apparent that the dynamics of the triangular interactions of counsel with each other and with the magistrate judge had deteriorated in a fashion detrimental to the expeditious movement of the litigation forward, notwithstanding that the magistrate judge had been entirely blameless."). As discussed, *supra*, comments made by Magistrate Judge Wilson during the January 26, 2017 hearing emboldened QCER's recent tactics of taking unreasonable positions regarding discovery. As such, this Court should vacate current references to the Magistrate and all pending and future discovery disputes in this matter should be heard before the District Court.

## CONCLUSION

Plaintiff / Counter-Defendants respectfully request the Court vacate all references to the magistrate and retain jurisdiction of all pending and future discovery disputes in this matter.


Dated: April 17, 2017                                        Respectfully submitted,

                                                            By: s/ *Jonathan Pollard*

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com
**Pollard PLLC**
401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731

*Attorney for Plaintiff / Counter-Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2017, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notification to all CM/ECF participants in this case.

By: s/ *Jonathan Pollard*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), undersigned counsel conferred in good faith regarding the relief sought herein. QCER's counsel stated that it opposed this Motion.